**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

| | |
|---|---|
| **IN RE SIMPLY ORANGE ORANGE JUICE MARKETING AND SALES PRACTICES LITIGATION** | MDL No. 2361 |
| | Master Case No. 4:12-md-02361-FJG |
| This Document Relates To: ALL CASES | JURY TRIAL DEMANDED |

## MASTER CONSOLIDATED COMPLAINT

This Master Consolidated Complaint ("Consolidated Complaint") against Defendant The Coca-Cola Company ("Coca-Cola" or "Defendant") is brought by individual consumers residing in Alabama, California, Florida, Illinois, Missouri, New Jersey, and New York (collectively, "Plaintiffs") on behalf of themselves and on behalf of all others similarly situated. The allegations in this Consolidated Complaint are based upon Plaintiffs' personal knowledge as to themselves, on information and belief, and the investigation of their counsel.

# TABLE OF CONTENTS

NATURE OF THE ACTION ........................................................................................ 4

INTRODUCTION ....................................................................................................... 5

THE PARTIES............................................................................................................ 8

   I.   Plaintiffs ........................................................................................................ 8

      A.  Alabama Plaintiff .................................................................................. 8

      B.  California Plaintiffs ............................................................................. 10

      C.  Florida Plaintiffs................................................................................. 12

      D.  Illinois Plaintiff .................................................................................. 13

      E.  Missouri Plaintiff................................................................................ 14

      F.  New Jersey Plaintiff ........................................................................... 15

      G.  New York Plaintiff ............................................................................. 15

   II.  Defendant .................................................................................................... 16

JURISDICTION AND VENUE ................................................................................. 16

FACTS COMMON TO ALL CLAIMS RELATED TO SIMPLY ORANGE............................ 17

FACTS COMMON TO ALL CLAIMS RELATED TO MINUTE MAID PURE SQUEEZED. 37

FACTS COMMON TO ALL CLAIMS RELATED TO MINUTE MAID PREMIUM ............. 40

CLASS ACTION ALLEGATIONS ............................................................................ 45

CAUSES OF ACTION ............................................................................................... 49

COUNT I .................................................................................................................... 49

COUNT II ................................................................................................................... 51

COUNT III ................................................................................................................. 53

COUNT IV .................................................................................................................. 55

COUNT V ................................................................................................................... 57

COUNT VI .................................................................................................................. 58

COUNT VII ................................................................................................................ 60

COUNT VIII ............................................................................................................... 61

COUNT IX .................................................................................................................. 63

COUNT X ................................................................................................................... 64

COUNT XI .................................................................................................................. 66

COUNT XII ................................................................................................................ 67

COUNT XIII ............................................................................................................... 69

COUNT XIV ............................................................................................................... 71

COUNT XV ................................................................................................................ 72

COUNT XVI...............................................................................................................................74

JURY DEMAND........................................................................................................................76

Case 4:12-md-02361-FJG   Document 23   Filed 08/14/12   Page 3 of 77

## NATURE OF THE ACTION

1.      From at least March 2006 through the present (also referred to as "the Class Period"), the leading producer and marketer of branded fruit juices, Coca-Cola, has falsely been claiming that its "not-from-concentrate" Simply Orange brand orange juice ("Simply Orange") is "100% Pure Squeezed," "NOT FROM CONCENTRATE, " "Simply Orange," "Pure" and "Natural."   In truth, Coca-Cola's Simply Orange is chemically-flavored, heavily processed, designed and modified, and is not "100% Pure Squeezed," "Simply Orange," "pure," or "natural."

2.      Throughout the Class Period, Coca-Cola has systematically included the "100% Pure Squeezed," "NOT FROM CONCENTRATE" and "Simply Orange" nomenclature on the label of Simply Orange containers, on its Simply Orange website (www.simplyorangejuice.com), and in print and television advertisements, such that any United States consumer who purchases Simply Orange is exposed to these representations.   In addition, Coca-Cola markets and advertises Simply Orange as "Pure" and "Natural" on the Simply Orange website (www.simplyorangejuice.com) and in other advertising.

3.      These claims are deceptive and misleading because Simply Orange is heavily processed and contains added chemically-engineered flavoring that is unnatural, scientifically produced, and designed in laboratories by chemists, food scientists, and flavorists.

4.      Coca-Cola's conduct harms consumers by inducing them to purchase and consume a product with added chemically-engineered flavoring on the false premise that Simply Orange is "100% Pure Squeezed" orange juice.

5.      Mass marketed orange juice such as Simply Orange cannot be freshly squeezed because freshly squeezed orange juice is unstable and has a short shelf-life.   Freshly-squeezed

orange juice has a shelf life of approximately ten days when refrigerated and between three and six months when frozen. Industrial processing and storage improves shelf-life, but adversely affects the flavor and aroma of orange juice. Nonetheless, to extend shelf-life, Coca-Cola's Simply Orange undergoes extensive processing, which includes the addition of aromas and flavors. This processing changes the essential nature of Simply Orange. It is not a "100% Pure Squeezed" orange juice. Rather, it is a product that is extensively processed, manipulated, and engineered in laboratories, and has a shelf-life of more than two months.

## **INTRODUCTION**

6.      Coca-Cola deceptively promotes Simply Orange (and is able to charge a premium price) to take advantage of consumers' preference for pure and natural products. For example, Simply Orange is marketed as "Pure" and "Natural" orange juice even though it has been pasteurized, deaerated, stripped of its flavor and aroma, stored for long periods of time before it ever reaches consumers, and then chemically flavored, before it is packaged directly into the container. Some of the non-natural aspects of these processes include:

a.      the removal of naturally-present air from the intercellular spaces of the juice through the deaeration process;

b.      the reduction and deactivation of naturally occurring enzymes and microbial activity through pasteurization;

c.      long term storage of deaerated and pasteurized juices for a year or longer;

d.      the addition of chemically-engineered flavoring to mimic the flavor that natural orange juice has – which, because it is natural, requires no added flavoring; and

e.   the mixing of numerous types of oranges from Florida and Brazil that are then flavored to cover up varietal and geographic differences.

7.   Rather than conveying a truthful message that Simply Orange actually is a heavily-processed, pasteurized, deaerated, and flavored beverage, Coca-Cola instead markets Simply Orange deceptively by stating that it is not reconstituted from concentrate and that it is "gently pasteurized."

8.   Through Coca-Cola's deception, consumers are left with the false belief that Simply Orange is akin to freshly-squeezed orange juice. Coca-Cola's Simply Orange is not fresh orange juice and its taste is a result of added flavoring, not "gentle" processing as Coca-Cola suggests in its marketing materials and advertisements. Due to their false belief of the purity and freshness of Simply Orange, consumers are willing to pay (and do pay) a premium price for Simply Orange.

9.   Additionally, Coca-Cola's ability to extract a premium for its Simply Orange would not be possible without the flavor enhancement provided by a cocktail of substances in the chemically-engineered flavoring added by Coca-Cola.

10.   Coca-Cola falsely claims that it does not add flavoring to Simply Orange in its advertisements.

11.   Coca-Cola uses blending and chemically engineered-flavoring to maintain uniform quality of Simply Orange so that regardless of the season consumers purchase a uniform product with a uniform taste that would be impossible with a fresh-squeezed natural orange juice.

6

12.     Accordingly, Coca-Cola misleads and deceives reasonable consumers including the named Plaintiffs and other members of the Class by portraying Simply Orange as "100% Pure Squeezed," "Simply Orange," "NOT FROM CONCENTRATE," "Pure," and "Natural."

13.     Additionally, since the launch of Coca-Cola's Minute Maid Pure Squeezed Never From Concentrate orange juice ("Minute Maid Pure Squeezed") in October 2011 and through the present (the "Minute Maid Pure Squeezed Class Period"), Coca-Cola has been falsely claiming that Minute Maid Pure Squeezed is "Pure Squeezed" and "100% Pure Squeezed."

14.     Furthermore, during the Class Period, Coca-Cola has been falsely claiming that its heavily-processed, designed, and modified Minute Maid Premium Original From Concentrate orange juice ("Minute Maid Premium") is "100% Pure Squeezed" orange juice, "100% Orange Juice," and contains "natural orange goodness."

15.     Plaintiffs seek relief in this action both individually, as well as on behalf of classes (collectively, the "Classes") composed of all purchasers – in the states of Alabama, California, Illinois, Missouri, New Jersey, and New York, respectively – of Coca-Cola's Simply Orange labeled and marketed as being "100% Pure Squeezed" orange juice, "Simply Orange," "NOT FROM CONCENTRATE," "Pure" and "Natural" during the Class Period.  Plaintiffs assert claims for untrue and misleading advertising, unfair competition, unfair and deceptive acts and practices, breach of express warranty, breach of implied warranty, and unjust enrichment under the statutory and common laws of the states in which Plaintiffs reside, and seek relief in the form of damages, restitution, and declaratory and injunctive relief.

16.     In addition, John Albert Veal, Jr. ("Plaintiff Veal" or "Mr. Veal") seeks relief in this action individually and on behalf of a class of all purchasers residing in the State of Alabama of Minute Maid Pure Squeezed labeled as "Never From Concentrate," "Pure Squeezed" orange

juice, and "100% Pure Squeezed" orange juice during the Minute Maid Pure Squeezed Class Period. He alleges claims for injunctive relief, breach of express warranty and breach of contract under the statutory and common laws of the state of Alabama.

17. Plaintiff Veal also seeks relief in this action individually and on behalf of a class of all purchasers residing in the State of Alabama of Minute Maid Premium labeled and marketed as "100% Pure Squeezed," 100% Orange Juice," and as containing "natural orange goodness" during the Class Period. He alleges claims for injunctive relief, breach of express warranty, and breach of contract under the statutory and common laws of the Alabama.

**THE PARTIES**

I. **Plaintiffs**

A. **Alabama Plaintiff**

**John Albert Veal, Jr.**

18. Plaintiff Veal is an adult resident and citizen of Shelby County, Alabama. During the Class Period, Mr. Veal purchased 89-ounce containers of Simply Orange one to two times per month for his personal consumption. He made these purchases at Winn Dixie, Walmart, Publix, Target, and Western supermarkets near his residence in Jefferson and Shelby counties, Alabama for personal, family, or household purposes. Throughout the Class Period, Coca-Cola labeled and advertised Simply Orange as "100% Pure Squeezed," "Simply Orange" and "NOT FROM CONCENTRATE." During the Class Period, Mr. Veal saw these claims at least one to two times per month on the labeling and packaging of Simply Orange at the aforementioned stores near his residence each time he purchased Simply Orange. Mr. Veal purchased Simply Orange because he believed and relied on these claims. He would not have purchased Simply Orange but for Coca-Cola's misrepresentation that Simply Orange is "100% Pure Squeezed,"

"Simply Orange," and "NOT FROM CONCENTRATE." Mr. Veal was injured in fact and lost money as a result of Coca-Cola's misrepresenting Simply Orange as "100% Pure Squeezed," "Simply Orange," and "NOT FROM CONCENTRATE" because he paid a price premium for a "100% Pure Squeezed" and "[s]imply [o]range" juice product but did not receive a product that was, in fact, "100% Pure Squeezed" and "[s]imply [o]range" juice. Instead, Mr. Veal received a product that was heavily processed and contained added flavoring.

19.     During the Class Period, Plaintiff Veal also purchased Minute Maid Premium from stores such as Target, Walmart, Publix, Winn Dixie, and Western supermarkets near his residence for personal, family, or household purposes. Throughout the Class Period, Coca-Cola labeled and advertised Minute Maid Premium as "100% Pure Squeezed" orange juice, "100% Orange Juice," and as containing "natural orange goodness." During the Class Period, Plaintiff Veal saw and read Coca-Cola's misrepresentations that Minute Maid Premium is "100% Pure Squeezed" orange juice, is "100% Orange Juice," and contains "natural orange goodness," and he relied on such representations in deciding to purchase Minute Maid Premium. Mr. Veal purchased Minute Maid Premium because he believed and relied on Coca-Cola's representations that Minute Maid Premium was "100% Pure Squeezed" orange juice, "100% Orange Juice" and contained "natural orange goodness." He would not have purchased Minute Maid Premium but for Coca-Cola's misrepresentation that Minute Maid Premium is "100% Pure Squeezed" orange juice," is "100% Orange Juice," and contains "natural orange goodness." Mr. Veal was injured in fact and lost money as a result of Coca-Cola's misrepresenting Minute Maid Premium as "100% Pure Squeezed" orange juice, "100% Orange Juice," and as containing "natural orange goodness" in that he paid a price premium for a product that was "100% Pure Squeezed" orange juice, "100% Orange Juice," and contained "natural orange goodness," but did not receive a

9

product that possessed those attributes. Instead, Mr. Veal received a product that was heavily processed and contained added flavoring.

20.     During the Minute Maid Pure Squeezed Class Period, Plaintiff Veal also purchased Minute Maid Pure Squeezed from stores such as Target, Walmart, Publix, Winn Dixie, and Western supermarkets near his residence in Jefferson and Shelby counties, Alabama for personal, family, or household purposes. Throughout the Minute Maid Pure Squeezed Class Period, Coca-Cola labeled and advertised Minute Maid Pure Squeezed as "Pure Squeezed," "100% Pure Squeezed," and "Never From Concentrate." During the Minute Maid Pure Squeezed Class Period, Mr. Veal saw "Pure Squeezed," "100% Pure Squeezed," and "Never From Concentrate" and relied on such representations in deciding to purchase Minute Maid Pure Squeezed. Mr. Veal purchased Minute Maid Pure Squeezed because he believed and relied on Coca-Cola's representations that Minute Maid Pure Squeezed was "Pure Squeezed" and "100% Pure Squeezed." He would not have purchased Minute Maid Pure Squeezed but for Coca-Cola's misrepresentation that Minute Maid Pure Squeezed is "Pure Squeezed" and "100% Pure Squeezed." Mr. Veal paid a price premium for a "Pure Squeezed" and "100% Pure Squeezed" product but did not receive a product that was, in fact, "Pure Squeezed" and "100% Pure Squeezed." Instead, Mr. Veal received a product that was heavily processed and contained added flavoring.

B.     **California Plaintiffs**

1.  **Darren Gonzalez**

21.     Plaintiff Darren Gonzalez ("Plaintiff Gonzalez" or "Mr. Gonzalez") is a consumer residing in California. During the Class Period and as recently as early 2012, Mr. Gonzalez purchased 59-ounce and single-serve containers of Simply Orange at least weekly for his

personal consumption.   Plaintiff Gonzalez made these purchases at Winco Foods, Safeway, Lucky and 7-11 markets in Vacaville, California.   Throughout the Class Period, Coca-Cola labeled and advertised Simply Orange as "100% Pure Squeezed," "Simply Orange," and "NOT FROM CONCENTRATE."  During the Class Period, Mr. Gonzalez saw "100% Pure Squeezed" "Simply Orange" and "NOT FROM CONCENTRATE" at least weekly on the labeling and packaging of Simply Orange at Winco Foods, Safeway, Lucky Supermarkets and 7-11 in Vacaville, California each time he purchased Simply Orange.  Mr. Gonzalez purchased Simply Orange because he believed and relied on Coca-Cola's representations that Simply Orange was "100% Pure Squeezed," Simply Orange" and "NOT FROM CONCENTRATE."  He would not have purchased Simply Orange but for Coca-Cola's misrepresentation that Simply Orange is "100% Pure Squeezed," "Simply Orange," and "NOT FROM CONCENTRATE."  Mr. Gonzalez was injured in fact and lost money as a result of Coca-Cola's misrepresenting Simply Orange as "100% Pure Squeezed" in that he paid a price premium for a "100% Pure Squeezed" product but did not receive a product that was, in fact, "simply orange" and "100% Pure Squeezed" juice. Instead, Mr. Gonzalez received a product that was heavily processed and contained added flavoring.

### 2.  Kirk Yee

22.    Plaintiff Kirk Yee ("Plaintiff Yee" or "Mr. Yee") is a consumer residing in California.  During the Class Period, Mr. Yee weekly purchased 59-ounce containers of Simply Orange for his personal consumption.   Plaintiff Yee made these purchases at Safeway located at 735 7th Avenue, San Francisco, California.  Throughout the Class Period, Coca-Cola labeled and advertised Simply Orange as "Simply Orange," "100% Pure Squeezed" and "NOT FROM CONCENTRATE."   During the Class Period, Mr. Yee saw these claims on the packaging of Simply Orange at Safeway located at 735 7th Avenue, San Francisco, California weekly when he

purchased Simply Orange. Mr. Yee purchased Simply Orange because he believed and relied on Coca-Cola's representations that Simply Orange was "[s]imply [o]range," "100% Pure Squeezed," and "NOT FROM CONCENTRATE." He would not have purchased Simply Orange but for Coca-Cola's misrepresentation that Simply Orange is "[s]imply [o]range" and "100% Pure Squeezed" orange juice, and that it is "NOT FROM CONCENTRATE." Mr. Yee paid a price premium for a "[s]imply [o]range," "100% Pure Squeezed" juice product but did not receive a product that was, in fact, "[s]imply [o]range" and "100% Pure Squeezed" juice. Instead, Mr. Yee received a product that was heavily processed and contained added flavoring.

### C. Florida Plaintiffs

#### 1. William Hallman

23. Plaintiff William Hallman ("Plaintiff Hallman" or "Mr. Hallman") is a consumer residing in Florida. During the Class Period, Mr. Hallman weekly purchased 59-ounce containers of Simply Orange for his personal consumption. Plaintiff Hallman made these purchases at the Publix Supermarkets located at 7999 Dr. Martin Luther King St. N., St. Petersburg, Florida and at 3700 4th Street N. St. Petersburg, Florida. Throughout the Class Period, Coca-Cola labeled and advertised Simply Orange as "100% Pure Squeezed," "NOT FROM CONCENTRATE," and "[s]imply [o]range" juice. During the Class Period, Mr. Hallman saw these claims at least weekly on the labeling and packaging of Simply Orange while he was purchasing it. He purchased Simply Orange because he believed and relied on Coca-Cola's representations that Simply Orange was "100% Pure Squeezed" and "[s]imply [o]range" juice. Mr. Hallman would not have purchased Simply Orange but for these misrepresentations. He paid a price premium for a "100% Pure Squeezed" and "[s]imply [o]range" juice product but did not receive a product that was, in fact, "100% Pure Squeezed"

and "[s]imply [o]range" juice. Instead, Mr. Hallman received a product that was heavily processed and contained added flavoring.

### 2. Cheryl D'Aloia

24. Plaintiff Cheryl D'Aloia ("Plaintiff D'Aloia" or "Ms. D'Aloia") is a consumer residing in Florida. During the Class Period, Ms. D'Aloia weekly purchased single serve containers of Simply Orange for her personal consumption. Plaintiff D'Aloia made these purchases at the Publix Supermarkets located in St. Petersburg, Florida. Throughout the Class Period, Coca-Cola labeled and advertised Simply Orange as "100% Pure Squeezed," "NOT FROM CONCENTRATE," and "[s]imply [o]range" juice. During the Class Period, Ms. D'Aloia saw these claims at least weekly on the labeling and packaging of Simply Orange while she was purchasing it. She purchased Simply Orange because she believed and relied on Coca-Cola's representations that Simply Orange was "100% Pure Squeezed" and "[s]imply [o]range" juice. Ms. D'Aloia would not have purchased Simply Orange but for these misrepresentations. She paid a price premium for a "100% Pure Squeezed" and "[s]imply [o]range" juice product but did not receive a product that was, in fact, "100% Pure Squeezed" and "[s]imply [o]range" juice. Instead, Ms. D'Aloia received a product that was heavily processed and contained added flavoring.

### D. Illinois Plaintiff

### Randall Davis

25. Plaintiff Randall Davis ("Plaintiff Davis" or "Mr. Davis") is a consumer residing in the state of Illinois. During the Class Period, on an approximately twice monthly basis, Plaintiff Davis purchased 59-ounce containers of Simply Orange at Jewel in Mundelein, Illinois for personal, family, or household purposes. Throughout the Class Period, Coca-Cola labeled and advertised Simply Orange as "100% Pure Squeezed," NOT FROM CONCENTRATE," and

"[s]imply [o]range" juice.  During the Class Period, Mr. Davis saw these claims on the labeling and packaging of Simply Orange when he purchased it.  Mr. Davis purchased Simply Orange because he believed and relied on Coca-Cola's representations that Simply Orange was "100% Pure Squeezed," and "[s]imply [o]range" juice.  He would not have purchased Simply Orange but for these misrepresentations.  Mr. Davis paid a price premium for a "100% Pure Squeezed" and "[s]imply [o]range" juice product but did not receive a product that was, in fact, "100% Pure Squeezed" and "[s]imply [o]range" juice.  Instead, Mr. Davis received a product that was heavily processed and contained added flavoring.

### E.     Missouri Plaintiff

### Philip Wieczorek

26.     Plaintiff Philip J. Wieczorek ("Plaintiff Wieczorek" or "Mr. Wieczorek") is a consumer residing in Lee's Summit, Missouri.  During the Class Period, on an approximately monthly basis, Plaintiff Wieczorek purchased 59-ounce or 89-ounce containers of Simply Orange at Hy-Vee, Price Chopper and Walmart in Jackson County, Missouri for personal, family, or household purposes.  Throughout the Class Period, Coca-Cola labeled and advertised Simply Orange as "100% Pure Squeezed," "NOT FROM CONCENTRATE," and "[s]imply [o]range" juice.  During the Class Period, Mr. Wieczorek saw these claims on the labeling and packaging of Simply Orange when he purchased it.  Mr. Wieczorek purchased Simply Orange because he believed and relied on Coca-Cola's representations that Simply Orange was "100% Pure Squeezed" and "[s]imply [o]range" juice.  He would not have purchased Simply Orange but for these misrepresentations.  Mr. Wieczorek paid a price premium for a "100% Pure Squeezed" and "[s]imply [o]range" product but did not receive a product that was, in fact, "100% Pure

Squeezed" and "[s]imply [o]range" juice. Instead, Mr. Wieczorek received a product that was heavily processed and contained added flavoring.

### F. New Jersey Plaintiff

#### Carole Sovocool

27. Plaintiff Carole Sovocool ("Plaintiff Sovocool" or "Ms. Sovocool") is a consumer residing in New Jersey. During the Class Period, Ms. Sovocool weekly purchased 59-ounce containers of Simply Orange for her personal consumption. Plaintiff Sovocool usually made these purchases at Stop & Shop in Clifton, New Jersey. Throughout the Class Period, Coca-Cola labeled and advertised Simply Orange as "100% Pure Squeezed," "NOT FROM CONCENTRATE," and "[s]imply [o]range" juice. During the Class Period, Ms. Sovocool saw these claims at least weekly on the labeling and packaging of Simply Orange in the course of her purchases of Simply Orange. Ms. Sovocool purchased Simply Orange because she believed and relied on Coca-Cola's representations that Simply Orange was "100% Pure Squeezed" and "[s]imply "[o]range." She would not have purchased Simply Orange but for these misrepresentations. Ms. Sovocool paid a price premium for a "100% Pure Squeezed" and "[s]imply [o]range" juice product but did not receive a product that was, in fact, "100% Pure Squeezed" and "[s]imply [o]range" juice. Instead, Ms. Sovocool received a product that was heavily processed and contained added flavoring.

### G. New York Plaintiff

#### Jeremy Dasaro

28. Plaintiff Jeremy Dasaro ("Plaintiff Dasaro" or "Mr. Dasaro") is a consumer residing in New York. During the Class Period, approximately every two weeks, Mr. Dasaro purchased 59-ounce containers of Simply Orange for his personal consumption. Plaintiff Dasaro

usually made these purchases at Iga Supermarket in the State of New York. Throughout the Class Period, Coca-Cola labeled and advertised Simply Orange as "100% Pure Squeezed," "NOT FROM CONCENTRATE," and "[s]imply [o]range." During the Class Period, Mr. Dasaro saw these claims at least every two weeks on the labeling and packaging of Simply Orange when he purchased it. Mr. Dasaro purchased Simply Orange because he believed and relied on Coca-Cola's representations that Simply Orange was "100% Pure Squeezed" and "[s]imply [o]range" juice. He would not have purchased Simply Orange but for these misrepresentations. Mr. Dasaro paid a price premium for a "100% Pure Squeezed" and "[s]imply [o]range" juice product but did not receive a product that was, in fact "100% Pure Squeezed" and "[s]imply [o]range" juice. Instead, Mr. Dasaro received a product that was heavily processed and contained added flavoring.

## II. Defendant

29. Defendant Coca-Cola (also referred to herein as "Defendant") is a Delaware corporation with its principal place of business located at One Coca-Cola Plaza, Atlanta, Georgia 30313. Coca-Cola manufactures, markets, and sells Simply Orange and Minute Maid products nationwide.

30. The Simply Orange Juice Company is a division of Coca-Cola, through which Coca-Cola produces, markets, and sells Simply Orange nationwide.

31. The Minute Maid Company is a division of Coca-Cola, through which Coca-Cola produces, markets, and sells Minute Maid Premium and Minute Maid Pure Squeezed nationwide.

## JURISDICTION AND VENUE

32. On June 11, 2012, the Judicial Panel on Multidistrict Litigation ("JPML") ordered all related actions filed outside this District to be transferred here for coordinated pre-trial

proceedings pursuant to 28 U.S.C. § 1407.

33. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 members in one or more of the proposed classes; the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs; and at least all members of the proposed classes are citizens of a state different from Defendant.

34. This Court has personal jurisdiction over Defendant because a substantial portion of the wrongdoing alleged by Plaintiffs occurred in Missouri, Defendant has sufficient minimum contacts with and/or otherwise intentionally avails itself of the markets in Missouri, and Defendant has sufficient contacts with this District such that it is fair and just for Defendant to adjudicate this dispute here.

35. Pursuant to 28 U.S.C. § 1391, venue is proper in this Court because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District. Additionally, venue is proper here because the parties are subject to the JPML order transferring this litigation here.

## FACTS COMMON TO ALL CLAIMS RELATED TO SIMPLY ORANGE

### Coca-Cola Advertises and Markets Simply Orange as "Simply Orange," "100% Pure Squeezed," "NOT FROM CONCENTRATE" "Pure," and "Natural"

36. Throughout the Class Period, Coca-Cola systematically marketed and advertised Simply Orange as "Simply Orange" and "100% Pure Squeezed" orange juice; orange juice "NOT FROM CONCENTRATE"; and "Pure" and "Natural" orange juice on Simply Orange labeling, product packaging, print advertisements, and point-of-sale materials; in television commercials; and on the Simply Orange internet website (www.simplyorangejuice.com).

37. Coca-Cola labels every bottle of Simply Orange as "100% Pure Squeezed Pasteurized Orange Juice," "Simply Orange," and "NOT FROM CONCENTRATE" on the front

of the bottle in the representative images of Simply Orange reproduced below:





38. In addition to the claims on the label, throughout the Class Period, Coca-Cola also featured the claims "Simply Orange," "100% Pure Squeezed Orange Juice" "NOT FROM CONCENTRATE," and "pure, natural orange juice" in numerous locations throughout Simply Orange's picturesque website including next to the images of Simply Orange containers appearing in front of a serene and lush orange grove as depicted below:





Simply Orange Juice-Our Products, http://www.simplyorangejuice.com (last accessed Aug. 1, 2012)

39.     Throughout the Class Period, Coca-Cola's commercials for Simply Orange also reinforced the claim that Simply Orange is "100% Pure Squeezed" and "Simply Orange" juice, as noted in the below transcriptions of four Simply Orange commercials[1]:

**A. <u>Plant Tour</u>**

> Welcome to the simply orange tour.  This is our plant (orange tree), these are our workers (oranges on tree), this is upper management (picture focuses on sun).  ***But what you won't find around here is any freezing, flavoring, or concentrating.***  Which brings us to our end product:  Simply Orange.  Honestly simple.

(Emphasis added).

**B. <u>Secret Recipe</u>**

> (Serene picture of orange grove. Sound of birds chirping.)
> So, how exactly does Simply Orange always taste so fresh and delicious?  Well, we're prepared to share our secret recipe.  Grab a pen.  Ready?  ***We start with oranges and then we add-- -nothing!***  Shocking, I know.  Simply Orange.  Honestly simple.

(Emphasis added).

**C. <u>No Version 2.0</u>**

> No flashy upgrades. . . You started unfooled around with.  And that's just the way you are going to stay.  Not new, ***not improved.***  So perfect.  Simply Orange.  Honestly simple.

(Emphasis added).

---

[1]Available by clicking on the "In The News" tab at http://www.simplyorangejuice.com (last accessed Aug. 1, 2012).

### D. **Instructions**

> Do not sweeten, do not concentrate. Do not disturb. Nature at work. Simply Orange. Honestly simple.

40. By consistently and systematically marketing and advertising Simply Orange as "Simply Orange," "100% Pure Squeezed" orange juice and "NOT FROM CONCENTRATE" and reinforcing these claims with commercial advertisements promising that Simply Orange does not contain added flavoring, additives or other improvements, Coca-Cola ensured that all consumers purchasing Simply Orange would be exposed to these misrepresentations.

41. Claims that a product is "Simply Orange" juice, "100% Pure Squeezed Orange Juice," and "NOT FROM CONCENTRATE" are material to a reasonable consumer.

42. The central message of Coca-Cola's marketing and advertising of Simply Orange is that it is a pure and natural orange juice that does not contain flavoring or additives. As set forth below, however, this message is false, misleading, deceptive, and unfair.

**Coca-Cola Deceptively Markets Simply Orange as "100% Pure Squeezed," "Simply Orange" "NOT FROM CONCENTRATE" "Pure," and "Natural" to Boost Sales**

43. Coca-Cola leaves out the details about how its Simply Orange is produced, processed, and flavored in its advertisements and on its containers, and it fails to include an ingredient – chemically-engineered flavoring – on the Simply Orange label.

44. The term "NOT FROM CONCENTRATE" is intended to denote juice that is fresh or close to just squeezed.

45. Although consumers may understand that Coca-Cola's Simply Orange is NOT FROM CONCENTRATE, Coca-Cola does not disclose that Simply Orange undergoes the extensive processing described herein, which includes adding flavors and ingredients, between

grove and table. As a result, Coca-Cola's use of the term "NOT FROM CONCENTRATE," which conveys to consumers a relatively unprocessed juice, is misleading.

46.     Coca-Cola understands that consumer perceptions of foods and in particular, pure and natural foods, affect purchasing decisions and consumption.

47.     The terms "100% Pure Squeezed," "Simply Orange" "NOT FROM CONCENTRATE," "pure," and "natural" carry plain expressions and overtones of purity.

48.     For more than a quarter century, surveys have shown that consumers prefer to buy natural foods whenever possible and that they believe natural foods taste better than other foods.

49.     Surveys have also long shown that a majority of consumers expect that a "100% natural" food is healthier for you and would be more expensive.

50.     Consumers do not consider processed foods as nourishing as fresh, unprocessed foods.

51.     "Natural" was the number one descriptor consumers looked for when purchasing food and drinks at retail stores in 2010.

52.     Nearly 70% of consumers are extremely or very interested in and aware of natural foods generally and more than half of all consumers are extremely or very interested in natural beverages specifically. At the same time, consumers eschew foods and beverages containing preservatives, added flavoring, added colors, and other chemical additives.

53.     Consumers consider safety, taste, and purity more important than price when shopping for food and beverages, and will therefore pay a premium for pure and natural products.

54.     Consumers' favorable views of natural, pure beverages influence their behavior and – importantly for Coca-Cola – purchasing decisions.

55. Coca-Cola understands the importance and value of descriptors and labels with the words "100% Pure Squeezed," "Simply Orange," "NOT FROM CONCENTRATE" "Natural," and "Pure" to consumers when considering whether to buy foods and beverages.

56. Coca-Cola realizes that consumers are increasingly aware of the relationship between health and diet and that consumers are demanding fresh and natural products that are minimally processed and thus pure.

57. Coca-Cola recognizes the growing interest in premium quality juices, with very mild pasteurization, distributed refrigerated and with a limited shelf-life.

58. Growth of Simply Orange sales has been fueled by consumer perception that it is a natural, pure, and premium product.

59. Coca-Cola unscrupulously capitalizes on consumers' heightened demand for pure and natural products by deceptively marketing Simply Orange. Although Coca-Cola claims that Simply Orange is "100% Pure Squeezed," "Simply Orange," "Not From Concentrate," "Pure," and "Natural," Simply Orange is far more complex, refined, and processed than those words convey.

60. Coca-Cola's Simply Orange is not "simply" orange juice, but rather is an extensively processed and flavored beverage, as its numerous patents reveal. Indeed, Coca-Cola holds numerous patents that concern or relate to the manipulation and added flavoring of Simply Orange.

61. Moreover, the orange oil, pulp, orange essence, and chemically-engineered flavoring that Coca-Cola adds to its juice during processing are not merely "incidental additives," but are instead ingredients that cause the basic composition of Simply Orange to be significantly different from the basic composition of pure, natural, freshly-squeezed orange juice.

Furthermore, these ingredients serve a technical function in Simply Orange, which includes rendering the juice drinkable again after being de-oiled, deaerated, pasteurized, and otherwise processed, and creating a uniform flavor year round. Even though Coca-Cola adds these ingredients to Simply Orange, nowhere on the product label does Coca-Cola disclose the addition.

62. Another aspect that makes Simply Orange much more highly processed than Coca-Cola's representations convey is that the juice is composed of a mixture of different types of orange juice, which the added flavoring is designed to mask.

63. For example, some batches of Simply Orange are mixtures of juice from Florida oranges, some or all of which has been stored from previous seasons, and Pera orange juice processed in Brazil and shipped to the United States. Processed, not-from-concentrate orange juice from Brazil is exported to ports in the United States in converted bulk carriers, tankers, and other massive shipping vessels. These orange juice tankers carry millions of gallons of orange juice cargo in cylindrical tanks. Brazil contributed as much as 20% of the juice contained in Simply Orange at times during the Class Period.

64. Coca-Cola's representations that Simply Orange is "100% Pure Squeezed," "Simply Orange," "NOT FROM CONCENTRATE," "Pure," and "Natural" pertain to the composition, attributes, characteristics, and value of its Simply Orange.

65. Because these representations do not accurately portray the composition, attributes, characteristics and value of Simply Orange, Plaintiffs and other members of the Classes purchased products that they would not have purchased or paid more than they otherwise would have been willing to pay if the Simply Orange they purchased had not been mislabeled.

**Coca-Cola's Simply Orange Is Extracted at Massive Processing Plants**

66.      Coca-Cola has never advertised or shown pictures of the massive orange juice tankers that carry millions of gallons of orange juice cargo in enormous cylindrical tanks, much less revealed its dependence upon them and their cargo.  During the Class Period, Coca-Cola included juice extracted from various types of sweet oranges that were processed at massive orange juice processing plants in Florida and Brazil.  These orange juice processing plants utilize Brown International or FMC juice extraction systems or other similar juice extraction equipment, which are controlled by computers in an essentially automated process.

67.      Brown International Corporation systems recover orange juice by reaming.  The reamers and cups are mounted in a vertical plane.  The reamer heads are attached to turning shafts on the two faces of a revolving cylindrical drum.  A feed wheel transfers oranges past a knife, which halves each fruit, to a chain of cups.  The cups deliver the orange halves to the reamers, the juice is collected beneath the reamers, and the reamed half-peels are ejected from the cups by a device called a kicker, which fits into a slot in the cups.  There are two product streams recovered at the juice extractor:  the pulpy juice and the peel residue.  These streams are recovered beneath the extractor lines for further processing.  The extracted juice stream goes to a primary finisher with a larger-hole screen size to separate the pulpy juice from the membranes, rags, and seeds.  The pulpy juice stream goes to another finisher with a smaller screen to effect separation of the juice and pulp.

68.      FMC extractors operate on the principle of instantaneous separation by squeezing the juice from the fruit.  The extractors are arranged in rows.  The upper and lower cups start to converge upon an orange held by the extractor.  The upper and lower cups cut two holes in the fruit and continue converging until the peel is separated from the fruit.  Peeled fruit is then squeezed into a strainer tube, which separates juice from seeds and the rest of the fruit.

69.     Because the fruit must be peeled carefully before the juice is extracted to eliminate peel oil in the juice, which is not commercially possible at the massive facilities where Simply Orange is extracted, the usual industrial practice is to remove excess oil during a separate de-oiling step.

### "100% Pure Squeezed," "Natural," and "Pure" Orange Juice Is Not De-Oiled

70.     Coca-Cola endeavors to maximize juice yield from its oranges.  Consequently, the juice ends up with too much peel oil.

71.     Because peel oil can reduce the quality of Simply Orange, Coca-Cola removes excess peel oil by vacuum stripping or de-oiling centrifuges.

72.     Coca-Cola, however, removes more oil than may otherwise be necessary so that it can add back its desired flavoring and standardize the taste of Simply Orange.

### "100% Pure Squeezed," "Natural," and "Pure" Orange Juice Does Not Undergo Deaeration

73.     "Air is naturally present in the intercellular spaces of fruits. During fruit maceration, homogenization, and juice extraction cells are crushed, the cell wall is disrupted and air is mixed into the juice.  Air can be present as dissolved gas in solution or associated with the pulp particles, for example, in orange juice.  During cell disruption, metabolites and enzymes that are normally compartmentalized are mixed, producing chemical and biochemical reactions.  Oxygen in air, present in the spaces between the juice vesicles, and from the surroundings, saturates the juice producing oxidation reactions that often result in browning, changes in aroma, and loss of nutritional value.  These reactions are exacerbated by the increase in temperature during pasteurization and reduce the overall quality of the product during storage."  R. Garcia-Torres, N.R. Ponagandla, R.L. Rouseff, R.M. Goodrich-Schneider & J.I. Reyes-De-Corcuera,

*Effects of Dissolved Oxygen in Fruit Juices and Methods of Removal*, 8 Comprehensive Rev. in Food Sci. & Food Safety 409 (2009) ("*Effects of Dissolved Oxygen in Fruit Juices*").

74.     Because oxygen reduces the quality of stored orange juice, Coca-Cola subjects its juice to a deaeration process that removes dissolved oxygen from the juice.

75.     Coca-Cola deliberately fails to mention that after being squeezed from oranges, its Simply Orange undergoes deaeration, which strips the juice of oxygen, so it does not oxidize.

76.     Flash or vacuum deaeration is the most common method of deaeration in the citrus industry.  This method of deaeration "performs the dual role of removing oxygen and removing excess peel oil from orange juice before pasteurization.  This operation is called 'flash deaeration' because of the sudden decrease in pressure that preheated juice undergoes as it enters the deaeration tank, producing a practically instantaneous separation." *Effects of Dissolved Oxygen in Fruit Juices*, 8 Comprehensive Rev. in Food Sci. & Food Safety at 417.

77.     Significantly, when orange juice is stripped of oxygen it is also stripped of important volatile compounds that provide flavor and aroma.

78.     To ensure a high elimination of dissolved oxygen, Coca-Cola preheats its Simply Orange before deaeration.  Heating orange juice further alters its flavor and reduces its aromatic quality.

**"100% Pure Squeezed," "Natural," and "Pure" Orange Juice Is Not Pasteurized and Then Stored for up to One Year**

79.     Simply Orange is also pasteurized to improve its shelf life, but the improved shelf life comes at the expense of the delicate flavor and aromatic quality of the juice.

80.     Pasteurization, a form of thermal processing, reduces, inactivates, or eliminates enzyme and microbial activity in orange juice in order to extend its shelf-life, but also further reduces aroma and flavor qualities, and produces undesirable off-flavor and off-odor compounds.

81. Pasteurization profoundly effects aroma composition and can create off-flavors or their precursors from Maillard, Strecker, and acid-catalyzed hydration reactions.

82. Heating causes irreversible damage to the flavor of orange juice.

83. Numerous tests have revealed the effect of pasteurization on the aromatic composition of orange juice and the decrease in the amounts of important flavor and aroma compounds like acetaldehyde, ethyl butyrate, and hexanal. Finally, aroma and flavor volatiles are further altered by storage. In fact, increased storage time leads to a decrease in sweet odor, strength of the orange odor, sweet flavor, sour flavor, and orange aftertaste, and increases off-flavors and off-odors.

84. Coca-Cola advertises that its Simply Orange is NOT FROM CONCENTRATE orange juice made from oranges that are "beyond all doubt…truly, sweetly ready" to be turned into Simply Orange. "**From there, our recipe is simplicity itself. Do not sweeten. Do not concentrate.** *Just let oranges be oranges*. And let their taste speak for itself" so that Simply Orange always has a "fresh-squeezed taste experience." (Emphasis added).

85. While pushing the purity and simplicity of the product, Coca-Cola fails to disclose to consumers that its product may be made from orange juice that has been stored for a year or more at a temperature of 30 degrees in multimillion-gallon tanks at a tank farm with precise nitrogen blanketing and mixing. It has been reported that tanks have been used for over 4 years without being cleaned or re-sterilized. This extended stopover between orange grove and the consumer's glass is never mentioned in Coca-Cola's advertising.

86. "There has been no technological breakthrough or identification of flavor constituents that would enable thermally pasteurized juice or reconstituted concentrate to taste exactly like fresh juice. . . . It may be simply stated that heating irreversibly and negatively alters

28

juice flavor, so that it no longer has the aroma and character of fresh juice." Dan Kimball, Mickey E. Parish & Robert Braddock, *Oranges and Tangerines, Processing Fruits*, SCIENCE AND TECHNOLOGY 630 (Diane M. Barret et al. eds., 2d ed., 2004).

87.     These are not sophisticated scientific tenets and Coca-Cola understands that pasteurization changes physical and chemical properties of orange juice; heat drives off volatiles, altering the original flavor of the fresh orange juice; and increased storage time and temperature conditions of storage can cause orange juice to deteriorate in taste and nutritional value.

88.     Pasteurization is neither the only, nor necessarily the most transformative step in Coca-Cola's production of Simply Orange.

89.     Prior to storage in the aseptic tanks Simply Orange is often heated again and is regularly heated once more before it is packaged. Coca-Cola does this notwithstanding its knowledge that the more Simply Orange is heated the more its flavor is depleted.

**"100% Pure Squeezed," "Simply Orange" "Pure" and "Natural" Orange Juice Is Not Processed with Chemically-Engineered Flavoring**

90.     Pure, freshly-squeezed orange juice smells and tastes fresh naturally. After the volatiles are stripped away from the orange juice and it is processed, however, the remaining Simply Orange is essentially an insipid, sugary, orange liquid that lacks the flavor and aroma of orange juice.

91.     Orange volatile flavor components can be separated into one of two broad categories: (i) the oil-soluble constituents in peel oil and in juice oil, and (ii) the water-soluble constituents present in the juice.

92.     The majority of the characteristic flavor of freshly-squeezed orange juice comes from the water-soluble components found in the juice sacs. These components are lost during processing, deaeration, pasteurization, and long-term storage.

93.     Without the addition of flavoring and aroma, Simply Orange would not only be unappealing to consumers, but also nearly undrinkable.

94.     To restore this liquid to a saleable product, and unbeknownst to reasonable consumers, Coca-Cola re-flavors the product through the addition of chemically-engineered flavoring.

95.     The flavorings added by Coca-Cola are unnatural and are scientifically produced and designed in laboratories by chemists, food scientists, and flavorists.

96.     The process of creating an objective flavor by blending various natural and/or synthetic aromatic materials is called formulation. Relying on olfaction and years of training and education, flavorists and perfumers select and blend numerous aromatic compounds for Coca-Cola in conformity with its needs and product concepts to develop flavoring so that Simply Orange will have a flavor that includes three different building blocks:

    a.    Top Note – the top note of flavors is composed of aroma components that volatilize rapidly and have lower flavor retention. Top note defines the first impression of the flavor.

    b.    Middle Note – the middle note of flavors consists of aroma components that subsequently volatilize and have moderate flavor retention, and also forms the main body of the flavor.

    c.    Base Note – the base note is a class of residual aroma components that volatilize very slowly and can linger for long periods of time. The base note contributes to determine aroma properties of the flavor.

97.     During pasteurization and deaeration, the components that compose the top note and middle note are lost from Simply Orange.  Coca-Cola understands that for Simply Orange to have a refreshing and juicy character, it needs to have a strong top note.

98.     Flavorists and chemically-engineered flavorings, not the grower in the grove or the fruit itself, give Simply Orange its distinctive taste.  Thus, the distinctive taste of Simply Orange is a product of science (*i.e.*, chemically-engineered flavoring), not the fruit.

99.     The flavorings that Coca-Cola adds to Simply Orange are scientifically engineered from synthetic (*i.e.*, extraneous) and natural sources in predetermined chemical formulations.  These flavorings serve a technical function in Simply Orange because they cause its chemical composition to be significantly different from that of freshly-squeezed orange juice.  The scientifically-engineered flavorings added to Simply Orange are not "incidental additives."  Rather, these flavorings constitute additional ingredients – ingredients not disclosed to consumers such as Plaintiffs and other members of the proposed classes.

100.     Further, peel oil and orange essence are added to Simply Orange at levels significantly in excess of those found in raw, freshly-squeezed orange juice.  Peel oil and orange essence are thus ingredients added to Simply Orange, not merely "incidental additives."

101.     Coca-Cola adds the chemically-engineered flavorings to provide and intensify aromas and flavors; to supply flavors and aromas that are lost during processing; and to suppress or mask undesired flavors that are created during processing and long-term storage.

102.     Flavorists process orange oils into various types of flavor materials with different levels of notes, flavor intensity, stability, and functionality, which enable the characteristic flavor of Simply Orange to be maintained at all times.

103.     Flavorists use microbiological and enzymatic processes to convert limonene and other peel oil compounds into other flavor compounds.

104.     Similarly, flavor components can be obtained by removing terpene hydrocarbons from the recovery essence oil by distillation or extraction. This process is also not natural.

105.     Flavorists specially design chemically-engineered flavorings that include water-soluble liquid flavors or emulsified flavors to satisfy Coca-Cola's specific needs and requirements.

106.     Emulsified flavors are obtained by adding water and emulsifiers and stabilizers to a flavor base, followed by homogenization.  Emulsified flavors do not dissolve, but disperse.  To ensure their dispersion state for a long time, the specific gravity of the emulsified flavors is adjusted to a value comparable to Simply Orange.

107.     Flavorists design the chemically-engineered flavorings to emphasize and highlight certain aromas and flavors associated with orange juice by fractionating orange oil and essence into individual components, reformulating them, and blending them in varying mixtures.  The aroma and flavoring added to Simply Orange bear little resemblance to the natural orange oil and essence that leaves the juice during deaeration or that is altered during pasteurization or storage because of flavor interactions that occur during flavoring.

108.     Coca-Cola also uses chemically-enhanced flavorings to improve the flavor and aroma of lower quality juice.

109.     Coca-Cola's distinctive taste is the product of a recipe created by scientists and flavorists that is not a product of nature.  Such a recipe cannot accurately be described as "Pure" and is certainly not "100% Pure Squeezed" or "Natural" orange juice.

**Volatile Compounds That Are Critical to Orange Juice Flavor and Aroma Exist in Vastly Differing Concentrations in Simply Orange Than They Do in Fresh Orange Juice**

110.     Although no single volatile can be considered a character impact compound, it is generally accepted that fresh orange flavor and aroma are the result of a collection of aroma active volatiles present in low concentrations, and it is fairly well accepted that total aldehydes and esters play an important role in orange juice flavor.

111.     Aldehydes are found at high concentration in fresh orange juice. Aldehydes, however, are so chemically reactive that thermal processing alters their concentrations.

112.     For example, studies have shown that thermal processing reduces acetaldehyde. Acetaldehyde is the major volatile aldehyde present in orange juice and studies have also shown that it is a major contributor to the fresh, pungent odor quality of freshly-squeezed orange juice.

113.     Similarly, esters are another group of chemical compounds that provide important flavor and aroma components for freshly squeezed orange juice. Total ester concentration has also been suggested as a measure of orange aqueous essence strength and quality.

114.     Ethyl butyrate, also known as ethyl butanoate, is one of the most intense odorants in orange juice and it is fairly well accepted that it is the single most important ester in orange juice.

115.     Coca-Cola adds high concentrations of specific chemical compounds to highlight the flavor of Coca-Cola's Simply Orange.

116.     Coca-Cola adds ethyl butyrate to Simply Orange because it provides the "freshest" characteristics to Simply Orange. But the addition of ethyl butyrate, which is water-soluble, dilutes Simply Orange.

117.    Hydrocarbons are another chemical compound whose concentration is low in freshly-squeezed orange juice, but vastly greater in Coca-Cola's highly-processed Simply Orange.

118.    The simple addition of orange peel oil to Simply Orange would not create Coca-Cola Simply Orange's distinctive flavor or mask the effects of the juice's extensive processing because more than 90% of the peel oil consists of terpene hydrocarbons, mainly limonene, but terpene hydrocarbons provide very limited flavor and aroma in orange juice.

119.    For example, limonene, the most prevalent terpene hydrocarbon, has little, if any, direct flavor or aroma impact because of its high odor thresholds.

120.    Moreover, while limonene is a major constituent in processed orange juice, including Simply Orange, its concentration in freshly-squeezed orange juice is much lower because of the elevated levels of peel oil that are introduced into the juice during commercial juice extraction.

121.    The mixture of volatile compounds with aroma activity is responsible for the characteristic aroma of orange juice.

**Coca-Cola Adds Back a Greater Volume of Volatile Compounds and/or Better Quality Volatile Compounds to Processed Orange Juice to Create Simply Orange**

122.    Coca-Cola adds aroma and flavoring to Simply Orange – the addition of which serves a technical function – to provide its processed orange juice an aromatic and flavor profile closer to fresh juice and to mask the effects of processing and storage.

123.    Irrespective of the time of year, Simply Orange tastes the same even though it is made from different varieties and blends of oranges that ripen at different times of the year because Coca-Cola uses added flavoring to maintain product consistency to address variations in the quality, variety, source, and ratios of oranges used (*e.g*., Valencia, Hamlin or Pera).

124. Coca-Cola adds back a greater volume of volatile compounds or better quality volatile compounds to Simply Orange in order to restore flavoring lost by the deleterious effects of processing and long-term storage; create Simply Orange's signature flavor; and ensure consistent taste and quality.

125. Thus, the addition of chemically-engineered flavoring to Simply Orange is not done in connection with "efficient processing" of the orange juice because the ingredients added to Simply Orange exist at levels significantly in excess of those found in unadulterated, freshly-squeezed orange juice.

126. Coca-Cola fails to mention that its use of chemically-engineered flavoring is what makes Simply Orange taste "fresh" and masks the effects of processing and storage.

127. To the contrary, Coca-Cola falsely claims that Simply Orange is not flavored and deliberately omits any reference to Coca-Cola's use of or reliance upon chemically-engineered flavorings that are not grown in an orange grove and which are designed by flavorists, even though these flavorings are an ingredient in Simply Orange.

128. Coca-Cola does not disclose to consumers on its labeling or mention in its advertising that its Simply Orange is dependent upon and enhanced by added flavoring and aroma. In fact, Coca-Cola states just the opposite. Coca-Cola expressly advertises on its website that Simply Orange is not flavored and nothing is added.

129. Coca-Cola also claims on its website that the quality, flavor, and characteristics of Simply Orange are a result of gentle squeezing, which is a far cry from the reaming and extraction methods actually used.

130.    Reasonable consumers desirous of 100% pure squeezed orange juice have been deceived into purchasing Simply Orange because Coca-Cola does not disclose its use of chemically-engineered flavoring.

131.    Chemically-engineered flavorings, which are made from processed orange oil and essence, are not "processing aids" or "incidental additives" as those terms are defined by the United States Food and Drug Administration ("FDA") because they are added in levels that are significantly different from the levels at which they would be present in raw orange juice, they are derived in part from synthetic (*i.e.*, extraneous) sources, and they serve a technical function.

### Orange Oil and Orange Essence Are Not Incidental Additives

132.    A 1993 FDA ruling confirmed that orange oil and essence do not qualify as "incidental additives" under an exemption because oils and essence are added to fruit juice for the purposes of fulfilling certain technical functions such as achieving uniform quality and organoleptic properties, and the level of use of the added ingredients is not insignificant.  58 Fed. Reg. 2850 (Jan. 6, 1993).

133.    Chemically-engineered flavorings should not be added to Simply Orange unless they are clearly identified on the product label.  By failing to identify the inclusion of chemically-engineered flavorings while including descriptors such as "100% Pure Squeezed," "Simply Orange," "NOT FROM CONCENTRATE," "Natural," and "Pure," the labeling, advertisements, and marketing materials for Simply Orange are deceptive and misleading.

### Flavor Is the Most Important Quality Criterion for Consumers

134.    Flavor has the strongest effect on quality impressions by consumers.  Similarly, added flavorings are second only to added coloring in the disapproval they engender in consumers.

135.    Flavor, more than any other quality criterion for food or beverages, has a double meaning:  it represents both substance content and physical properties. It plays a central role in enhancing the value and appeal of Coca-Cola's Simply Orange.

136.    Coca-Cola understands that flavor guides consumers' purchasing decisions and their willingness to pay for a product.  It also understands by experience that when flavor expectations are met or exceeded, they generate repeat sales and foster consumer loyalty.  Thus, a clear, consistent product flavor is crucial for Coca-Cola to ensure consumer satisfaction and maintain the appeal of Simply Orange.

## FACTS COMMON TO ALL CLAIMS RELATED TO
## MINUTE MAID PURE SQUEEZED

137.    Throughout the Minute Maid Pure Squeezed Class Period, Coca-Cola systematically marketed and advertised Minute Maid Pure Squeezed as "100% Pure Squeezed," "Pure Squeezed" and "Never From Concentrate" on Minute Maid Pure Squeezed labeling, product packaging, print advertisements, and point-of-sale materials; in television commercials; and on the Minute Maid internet website. (http://www.minutemaid.com /products/oj/default.html).

138.    Coca-Cola labels every bottle of Minute Maid Pure Squeezed as "100% Pure Squeezed," "Pure Squeezed," and "Never From Concentrate" on the front of Minute Maid Pure Squeezed containers and on the seal on the Minute Maid Pure Squeezed cap as reflected in the representative image of Minute Maid Pure Squeezed reproduced below:



Gently Pasteurized

139.     In addition, throughout the Minute Maid Pure Squeezed Class Period, Coca-Cola's commercials for Minute Maid Pure Squeezed also reinforced the claim that Minute Maid Pure Squeezed is "100% Pure Squeezed," "Pure Squeezed," and "Never From Concentrate" as noted in the below transcriptions of two Minute Maid commercials:

**A**.  **Sip Commercial**

Introducing Minute Maid Pure Squeezed: ***100% pure squeezed*** orange juice, never from concentrate.  It tastes just as good as a fresh, ripe orange, and oranges are not happy about it.  (Turns whole orange around, as if to prevent it seeing him, drinks orange juice, turns whole orange back to where it was.)

To the orange: "What happened?  That was weird." New Minute Maid Pure Squeezed.  **One hundred percent pure squeezed**, never from concentrate.  Put good in, get good out.

Available at https://www.minutemaid.com/social.html (last accessed Aug. 8, 2012) (emphasis added).

### B.  Minute Maid Pure Squeezed:  Cover Up, Commercial

(Female shopper pushing grocery cart past dairy case.  Female shopper pauses, notices whole oranges in case next to other Minute Maid Pure Squeezed juice cartons.  Female shopper turns around to look at the stock person with an expression of disbelief and female shopper shakes her head. Female shopper removes several oranges, revealing bottles of Minute Maid Pure Squeezed.  She takes one bottle and puts it in her grocery cart.  Female shopper pauses, hears something strange, and turns to see the whole oranges putting themselves back in place in front of the bottled Minute Maid Pure Squeezed.  Ominous music plays.  Female shopper frowns and turns back.)

"Tastes so good, oranges are jealous."

140.   By consistently and systematically marketing and advertising Minute Maid Pure Squeezed as "100% Pure Squeezed," "Pure Squeezed" and "Never From Concentrate" and reinforcing this claim with commercial advertisements promising that Minute Maid Pure Squeezed is 100% Pure Squeezed orange juice, Coca-Cola ensured that all consumers purchasing Minute Maid Pure Squeezed would be exposed to these representations.

141.   Representations that a product is "100% Pure Squeezed," "Pure Squeezed" and "Never From Concentrate" are material to a reasonable consumer.

142.   The central message of Coca-Cola's marketing and advertising of Minute Maid Pure Squeezed is that Minute Maid Pure Squeezed is a pure-squeezed orange juice that does not contain added flavoring or other additives.  As set forth below, however, this message is false, misleading, deceptive, and unfair.

143.   With respect to Minute Maid Pure Squeezed, the facts concerning its processing are essentially identical to those regarding Simply Orange as set forth above in paragraphs 36

through 136. As with Simply Orange, Coca-Cola subjects the unadulterated, squeezed orange juice to intense thermal pasteurization, deoxygenation, long-term storage, and chemical manipulation through the addition of peel oil, orange essence, and other chemically-manipulated ingredients.

144. As with Simply Orange, Coca-Cola further markets its Minute Maid Pure Squeezed as "100% Pure Squeezed," "Pure Squeezed" and "Never From Concentrate," in an effort to mislead consumers and to hide the simple fact that this orange juice is far from pure, but rather is a chemically manipulated, manufactured product. Accordingly, Plaintiff Veal adopts and realleges the allegations in paragraphs 36 through 136 above concerning Coca-Cola's manufacture and marketing of Simply Orange with respect to its manufacture and marketing of Minute Maid Pure Squeezed.

## FACTS COMMON TO ALL CLAIMS RELATED TO MINUTE MAID PREMIUM

145. Throughout the Class Period, Coca-Cola systematically marketed and advertised Minute Maid Premium as "100% Pure Squeezed" orange juice, "100% orange juice," and as containing "natural orange goodness" on Minute Maid Premium labeling, product packaging, print advertisements, point-of-sale materials; in television commercials; and on the Minute Maid Premium website (http://www.minutemaid.com/products/oj/default.html).

146. Coca-Cola labels every bottle of Minute Maid Premium as "100% Pure Squeezed" orange juice, "100% orange juice," and as containing "natural orange goodness" on the front and side panels of the containers in the representative images of Minute Maid Premium reproduced below:







# Maid.
## PREMIUM

## Put Good In.
## Get Good Out.®

You can taste and feel these words
in every drop of Minute Maid.
We fill every glass with the delicious, natural
goodness you have come to expect from us.
All because when it comes to life, we believe
what you believe. The effort you put in
is equal to the good you get out.

## Why does our orange juice taste so good?

We start with perfectly ripe,
fresh oranges. Then we
squeeze them to get every
last naturally delicious drop.

And did you know Minute Maid Premium
Orange Juice has, on average, even more
natural orange goodness – which scientists
call flavanones – than the fresh-squeezed
juice you get from those fancy juice bars?
Goodness found only in citrus fruits.
Scientists can call it whatever they want.
**We call it good stuff.**

Juice this special deserves a special package.
That's why we have a fresh package to go with
our delicious taste and natural goodness.

So enjoy and remember...



147. On the Minute Maid Premium packaging, Defendant tells consumers: "*We start with perfectly ripe, fresh oranges. Then we squeeze them to get every last naturally delicious drop.*" (Emphasis added). The label does not reveal that, after the juice is squeezed, the juice is subjected to intense thermal treatment, deoxygenation, dewatering, long-term storage, and freezing, with chemically-complex flavors added to the juice to overcome the flavor deficits caused by the intense industrial processes to which the juice is subjected, followed by thawing and reconstitution with the addition of water.

148. Rather, the label says: "And did you know Minute Maid Premium Orange Juice has, on average, even more *natural orange goodness* – which scientists call flavanones – than the

fresh-squeezed juice you get from those fancy juice bars? Goodness found only in citrus fruits." (Emphasis added).

149. By consistently and systematically marketing and advertising Minute Maid Premium as "100% Pure Squeezed," "100% Orange Juice," and as containing "natural orange goodness," Coca-Cola ensured that all consumers purchasing Minute Maid Premium would be exposed to these representations.

150. As with Simply Orange, Coca-Cola, though, does not disclose the degree of alteration it makes to Minute Maid Premium in the course of processing it or that it adds chemically-engineered flavoring, a separate ingredient not listed on the Minute Maid Premium label. Accordingly, Plaintiff Veal adopts and realleges the allegations in paragraphs 36 through 136 above concerning Coca-Cola's manufacture and marketing of Simply Orange with respect to its manufacture and marketing of Minute Maid Premium.

151. Minute Maid Premium is yet another step away from the consumer ideal of freshly-squeezed orange juice than is Coca-Cola's Simply Orange brand. It is subjected to the further industrial process of dewatering and freezing, and then reconstituted by melting frozen concentrated orange juice and mixing it with water.

152. In addition, upon information and belief, Coca-Cola adds chemically engineered flavoring to the juice after the juice has been pasteurized.

153. Nevertheless, Coca-Cola markets this unnatural and manufactured product as "100% Pure Squeezed," "100% orange juice," and as containing "natural orange goodness," with the only ingredients listed on the packaging as orange juice from concentrate and water.

154. Minute Maid Premium's touted "natural goodness" is actually the result of undisclosed chemical and manufacturing processes that go into producing it.

155. A representation that a product is "100% Pure Squeezed," "100% Orange Juice," and contains "natural orange goodness" is material to a reasonable consumer.

156. The central flavor of Coca-Cola's marketing and advertising of Minute Maid Premium is that Minute Maid Premium is 100% pure and natural orange juice that does not contain unnatural, chemically-engineered flavoring. However, this message is false, misleading, deceptive, and unfair.

157. Defendant sells Minute Maid Premium as "100% Pure Squeezed" orange juice, "100% orange juice," and as containing "natural orange goodness." Despite these claims, Minute Maid Premium is heavily processed, stored, and flavored before it is sold. Defendant's Minute Maid Premium is thus not "100% Pure Squeezed," and "100% orange juice." Rather, it is a product of industrial processing and laboratory-flavored juices.

158. Plaintiff Veal and the other members of the Minute Maid Premium Class have in the last six years purchased orange juice products produced, marketed, and sold by Defendant as "100% Pure Squeezed" "100% orange juice," and "natural."

159. Plaintiff Veal purchased Minute Maid Premium at various times from stores like Target, Walmart, Publix, Winn Dixie, and Bruno's near his residence in Jefferson and Shelby counties, Alabama.

160. Had Plaintiff Veal known the truth about Defendant's Minute Maid Premium, he would not have made his purchase choices, and would not have paid the higher value charged for the alleged quality of Minute Maid Premium.

161. Plaintiff Veal contacted Defendant at its customer service number (800-888-6488) on March 9, 2012, to request a refund and a change in Defendant's representations about its products, but Defendant rejected Plaintiff Veal's request.

## CLASS ACTION ALLEGATIONS

162.    Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23(a), (b)(1), (b)(2), and

(b)(3) on behalf of the following Classes:

### The "Alabama Class"

All purchasers of Coca-Cola's Simply Orange in the State of Alabama during the Class Period.  Excluded from the Class are Defendant; its parent, subsidiaries, and affiliates; and all directors and officers of the foregoing entities, as well as their immediate families.  Also excluded are any federal, state, or local governmental entities; any judicial officers presiding over this action and the members of their immediate family and judicial staff; and any juror assigned to this action.

### The "California Class"

All purchasers of Coca-Cola's Simply Orange in the State of California during the Class Period.  Excluded from the Class are Defendant; its parent, subsidiaries, and affiliates; and all directors and officers of the foregoing entities, as well as the members of their immediate families. Also excluded are any federal, state, or local governmental entities; any judicial officers presiding over this action and the members of their immediate family and judicial staff; and any juror assigned to this action.

### The "Florida Class"

All purchasers of Coca-Cola's Simply Orange in the State of Florida during the Class Period.  Excluded from the Class are Defendant; its parent, subsidiaries, and affiliates; and all directors and officers of the foregoing entities, as well as the members of their immediate families. Also excluded are any federal, state, or local governmental entities; any judicial officers presiding over this action and the members of their immediate family and judicial staff; and any juror assigned to this action.

### The "Illinois Class"

All purchasers of Coca-Cola's Simply Orange in the State of Illinois during the Class Period.  Excluded from the Class are Defendant; its parent, subsidiaries, and affiliates; and all directors and officers of the foregoing entities, as well as the members of their immediate families. Also excluded are any federal, state, or local governmental entities; any judicial officers presiding over this action and the members of their immediate family and judicial staff; and any juror assigned to this action.

**The "Missouri Class"**

> All purchasers of Coca-Cola's Simply Orange in the State of Missouri during the Class Period. Excluded from the Class are Defendant; its parent, subsidiaries, and affiliates; and all directors and officers of the foregoing entities, as well as the members of their immediate families. Also excluded are any federal, state, or local governmental entities; any judicial officers presiding over this action and the members of their immediate family and judicial staff; and any juror assigned to this action.

**The "New Jersey Class"**

> All purchasers of Coca-Cola's Simply Orange in the State of New Jersey during the Class Period. Excluded from the Class are Defendant, its parent, subsidiaries, and affiliates; and all directors and officers of the foregoing entities, as well as the members of their immediate families. Also excluded are any federal, state, or local governmental entities; any judicial officers presiding over this action and the members of their immediate family and judicial staff; and any juror assigned to this action.

**The "New York Class"**

> All purchasers of Coca-Cola's Simply Orange in the State of New York during the Class Period. Excluded from the Class are Defendant; its parent, subsidiaries, and affiliates; and all directors and officers of the foregoing entities, as well as the members of their immediate families. Also excluded are any federal, state, or local governmental entities; any judicial officers presiding over this action and the members of their immediate family and judicial staff; and any juror assigned to this action.

163. Plaintiff Veal also brings this action pursuant to Fed. R. Civ. P. 23(a), (b)(1), (b)(2), and (b)(3) on behalf of the following consumer class (the "Minute Maid Premium Class"):

> All purchasers of Coca-Cola's Minute Maid Premium in the State of Alabama during the Class Period. Excluded from the Class are Defendant; its parent, subsidiaries, and affiliates; and all directors and officers of the foregoing entities, as well as the members of their immediate families. Also excluded are any federal, state, or local governmental entities; any judicial officers presiding over this action and the members of their immediate family and judicial staff; and any juror assigned to this action.

164. Additionally, Plaintiff Veal brings this action pursuant to Fed. R. Civ. P. 23(a), (b)(1), (b)(2), and (b)(3) on behalf of the following consumer Class (the "Minute Maid Pure Squeezed Class"):

> All purchasers of Coca-Cola's Minute Maid Pure Squeezed in the State of Alabama during the Minute Maid Pure Squeezed Class Period. Excluded from the Class are Defendant, its parent, subsidiaries, and affiliates; all directors and officers of the foregoing entities, as well as the members of their immediate families. Also excluded are any federal, state, or local governmental entities; any judicial officers presiding over this action and the members of their immediate family and judicial staff; and any juror assigned to this action.

165. Members of the Classes are so numerous and geographically dispersed that their individual joinder herein is impracticable. The members of the Classes number in the many thousands. The precise number of Class members and their identities are unknown to Plaintiffs at this time but will be determined through discovery. Class members may be notified of the pendency of this action by mail and/or publication through the distribution of records of Coca-Cola and third party retailers and vendors.

166. As to all Class members, there are common questions of law and fact the resolution of which will, in turn, drive the resolution of the litigation. These common questions predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to:

> (a) whether Coca-Cola advertises, or markets Simply Orange, Minute Maid Premium, and Minute Maid Pure Squeezed in a way that is false or misleading;

> (b) whether Simply Orange, Minute Maid Premium, and Minute Maid Pure Squeezed failed to conform to the representations, which were published, disseminated, and advertised to Plaintiffs and Class members;

> (c) whether Coca-Cola concealed from Plaintiffs and the other Class members that Simply Orange, Minute Maid Premium, and Minute Maid Pure Squeezed did not conform to the stated representations;

(d)     whether, by the misconduct set forth in this Complaint, Coca-Cola has engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sales of Simply Orange, Minute Maid Premium, and Minute Maid Pure Squeezed;

(e)     whether Coca-Cola's practices violate applicable law; and

(f)     whether, as a result of Coca-Cola's misconduct as alleged herein, Plaintiffs and the other Class members are entitled to restitution or injunctive relief.

167.    Plaintiffs' claims are typical of the claims of the members of the Classes because they, like all members of the Classes, were exposed to Coca-Cola's representations about the products at issue and purchased those products.  They have no interests antagonistic to the interests of the other members of the Classes.  Plaintiffs and all members of the Classes have sustained economic injury arising out of Coca-Cola's violations of common and statutory law as alleged herein.

168.    Plaintiffs are adequate representatives of the Classes because their claims are typical, they have no conflicts with the interests of other Class members whom they seek to represent, and they have retained counsel who are experienced in prosecuting consumer class actions of this type.  Hence there is no genuine reason to doubt that Plaintiffs will vigorously prosecute this litigation on behalf of absent Class members.  Plaintiffs and their counsel will fairly and adequately protect the interests of the Classes.

169.    The class action mechanism is superior to other available means for the fair and efficient adjudication of the claims of all Class members.  Besides the predominance of questions common to all Class members, individual Class members lack the resources to undertake the burden and expense of individual prosecution of these claims against a well-financed corporate Defendant such as Coca-Cola, especially in comparison with the maximum individual recovery

to which each Class member would be entitled. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. It also presents a potential for inconsistent or contradictory judgments. In contrast, the Class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Coca-Cola's liability.

## CAUSES OF ACTION

### COUNT I
**Breach of Express Warranty**
**(on behalf of the Alabama, California, Illinois, Missouri,**
**New Jersey, and New York Classes)**

170. Plaintiffs Veal, Gonzalez, Yee, Davis, Wieczorek, Sovocool, and Dasaro repeat the allegations contained in the above paragraphs as if fully set forth herein.

171. Plaintiffs bring this claim individually and on behalf of the Alabama, California, Illinois, Missouri, New Jersey and New York Classes.

172. Plaintiffs Veal, Gonzalez, Yee, Davis, Wieczorek, Sovocool and Dasaro formed a contract with Coca-Cola at the time they purchased Simply Orange. The terms of that contract include the promises and affirmations of fact Coca-Cola makes on Simply Orange's packaging and through marketing and advertising including Coca-Cola's promise that Simply Orange is "100% Pure Squeezed," "Simply Orange," "NOT FROM CONCENTATE," "Pure" and "Natural," as described above. This marketing and advertising constitute express warranties and became part of the basis of the bargain, and are part of the standardized contract between, on the one hand, Coca-Cola and, on the other, Plaintiffs Veal, Gonzalez, Yee, Davis, Wieczorek, Sovocool, Dasaro and other members of the Alabama, California, Illinois, Missouri, New Jersey and New York Classes.

173.     In addition or in the alternative to the formation of an express contract, Coca-Cola made each of its above-described representations to induce Plaintiffs Veal, Gonzalez, Yee, Wieczorek, Sovocool, Dasaro, and other members of the Alabama, California, Illinois, Missouri, New Jersey and New York Classes to rely on such representations, and they each did so rely (and should be presumed to have relied) on Coca-Cola's "100% Pure Squeezed," "Simply Orange," "NOT FROM CONCENTRATE," and "Pure" representations as a material factor in their decisions to purchase Simply Orange.

174.     All conditions precedent to Coca-Cola's liability under this contract have been performed, including, to the extent required, all notices required by law, by Plaintiffs Veal, Gonzalez, Yee, Davis, Wieczorek, Sovocool, Dasaro.

175.     At all times relevant to this action, Coca-Cola has breached its express warranties about Simply Orange because Simply Orange is not "100% Pure Squeezed," "Simply Orange," "NOT FROM CONCENTRATE," and "Pure" but, rather, contains added chemically-engineered flavoring and is heavily processed in violation of state express warranty laws, including:

a.   Ala. Code 7-2-313;

b.   Cal. Com. Code § 2313;

c.   Ill.810 ILCS 5/2-313;

d.   Mo. Rev. Stat. § 400-2-313.1(a);

e.   N.J. Stat. Ann. § 12A-313;

f.   N.Y.UCC. Law § 2-313;

176.     The above-listed states do not require privity of contract to recover for breach of express warranty.

177.    Plaintiffs Veal, Gonzalez, Yee, Davis, Wieczorek, Sovocool, Dasaro and other members of the Alabama, California, Illinois, Missouri, New Jersey and New York Classes were injured as a direct and proximate result of Coca-Cola's breach because (a) they paid a price premium due to the misrepresentations and omissions of material fact on Simply Orange's packaging and in Coca-Cola's marketing and advertising of Simply Orange; and (b) Simply Orange did not have the composition, attributes, characteristics, or value promised.

## COUNT II
### Violation of the Missouri Merchandising Practices Act
### (on behalf of the Missouri Class)

178.    Plaintiff Wieczorek repeats the allegations contained in the above paragraphs as if fully set forth herein.

179.    Plaintiff Wieczorek asserts this claim individually and on behalf of the Missouri Class under the Missouri Merchandising Practices Act, codified at Mo. Rev. Stat. § 407.010 *et seq.*

180.    Coca-Cola is a "person" covered by the Merchandising Practices Act, and its marketing and sale of Simply Orange in Missouri subjected it to the regulatory restrictions contained in the Merchandising Practices Act. Under the Merchandising Practice Act, orange juice is considered "merchandise."

181.    Under the Merchandising Practices Act, it is unlawful for any person to use "deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise . . ." Mo. Rev. Stat. § 407.020.

182.    As set forth herein, Coca-Cola's conduct in connection with the advertising, marketing, sale, distribution, and offering of Simply Orange violates section 407.020(1) in that,

among other things, Coca-Cola has used and/or continues to use deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact.

183.    As set forth herein, Coca-Cola's deceptive acts, unfair practices, misrepresentations, and its concealment of material facts include, among other things, failing to disclose and concealing the highly processed nature of Simply Orange, and the flavoring that is added to Simply Orange.

184.    Coca-Cola's conduct further violates the Merchandising Practices Act pursuant to state regulation 15 C.S.R. § 60-8 because its conduct: (1) offends public policy; (2) is unethical, oppressive and unscrupulous; (3) causes substantial injury to consumers; (4) was not in good faith; (5) unfair; and (6) is unconscionable.

185.    Because Coca-Cola used deception, fraud, false pretense, false promise, misrepresentation, unfair practice and the concealment, suppression, or omission of material facts in connection with the advertising, marketing, sale, distribution, and offering of Simply Orange, Plaintiff Wieczorek and members of the Missouri Class suffered economic damages.

186.    Plaintiff Wieczorek and the other members of the Missouri Class seek actual damages; a declaration that Coca-Cola's methods, acts, and practices violate the Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.*; an injunction prohibiting Coca-Cola from continuing to engage in such unlawful methods, acts, and practices; restitution; rescission; pre-judgment interest; punitive damages; attorneys' fees and costs; and any other relief that the Court deems necessary and proper.

**Violation of California Consumer Legal Remedies**
**("CLRA"), California Civil Code § 1750 *et seq*.**
**(on behalf of the California Class)**

187.    Plaintiffs Gonzalez and Yee (also referred to herein as the "California Plaintiffs") repeat the allegations contained in the above paragraphs as if fully set forth herein.

188.    Plaintiffs Gonzalez and Yee assert this claim individually and on behalf of the California Class.

189.    This cause of action is brought pursuant to the California Consumer Legal Remedies Act (the "CLRA"), California Civil Code ("Cal. Civ. Code") § 1750 *et seq*.

190.    Plaintiffs Gonzalez and Yee and members of the California Class are "consumers" as the term is defined by Cal. Civ. Code § 1761(d), because they bought Simply Orange for personal, family, or household purposes.

191.    Plaintiffs Gonzalez and Yee, members of the California Class, and Defendants have engaged in "transactions," as that term is defined by Cal. Civ. Code § 1761(e).

192.    The Simply Orange that Plaintiffs Gonzalez and Yee and other members of the California Class purchased from Coca-Cola were "goods" within the meaning of Cal. Civ. Code § 1761(a).

193.    Cal. Civ. Code § 1770(a)(5) prohibits one who is involved in a transaction from "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have."   Coca-Cola violated this provision by representing Simply Orange as "100% Pure Squeezed" and "Simply Orange" when the juice is actually heavily processed and flavored.

194.    Cal. Civ. Code § 1770(a)(7) prohibits one who is involved in a transaction from "[r]epresenting that goods or services are of a particular, standard, quality, or grade or that goods

are of a particular style or model, if they are another."  Coca-Cola violated this provision by representing Simply Orange as "100% Pure Squeezed," "Simply Orange," and "Pure," when the juice is actually heavily processed and flavored.

195.    Cal. Civ. Code § 1770(a)(9) prohibits one who is involved in a transaction from "[a]dvertising goods or services with intent not to sell them as advertised."  Defendant violated this provision by representing Simply Orange as "100% Pure Squeezed,""Simply Orange," and "Pure" when Simply Orange is actually heavily processed and flavored.

196.    Through its actions, representations, and conduct, Defendant has violated, and continues to violate, the CLRA by falsely representing to the California Plaintiffs and other members of the California Class that Simply Orange is "100% Pure Squeezed," "Simply Orange," and "Pure."

197.    Plaintiffs Gonzalez and Yee and the California Class members suffered injuries caused by Coca-Cola's misrepresentations because they (a) were induced to purchase a product they would have not otherwise purchased if they had known that Simply Orange was heavily processed and flavored; and (b) paid a price premium due to the mislabeling of Simply Orange as 100% Pure Squeezed" orange juice and "Simply Orange."

198.    On March 19, 2012, prior to the filing of a complaint by Plaintiff Gonzalez, a CLRA notice was served on Defendant Coca-Cola, which complies in all respects with Cal. Civ. Code § 1782(a).  Plaintiff Gonzalez sent a letter via certified mail, return receipt requested, advising Coca-Cola that it is in violation of the CLRA and must correct, repair, replace, or otherwise rectify the goods alleged to be in violation of Cal. Civ. Code § 1770.  A true and correct copy of Plaintiff Gonzalez's CLRA letter is attached hereto as Exhibit A.  Coca-Cola was further advised that, in the event that the relief requested has not been provided within thirty

days, Plaintiff Gonzalez would amend his Complaint to include a request for monetary damages pursuant to the CLRA. Coca-Cola has failed to comply with that demand.

199.    Pursuant to Cal. Civ. Code § 1780(a)(3) Plaintiffs Gonzalez and Yee, on behalf of themselves and all other members of the California Class, seek compensatory damages, punitive damages, and restitution of Coca-Cola's ill-gotten gains from its unlawful acts and practices.

## COUNT IV
### Violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et. seq.* (on behalf of the California Class)

200.    Plaintiffs Gonzalez and Yee repeat the allegations contained in the above paragraphs as if fully set forth herein.

201.    The California Plaintiffs assert this claim individually and on behalf of the California Class.

202.    Such acts of Coca-Cola, as described above, and each of them, constitute unfair business acts and practices.

203.     Defendant is subject to the California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et. seq.* The UCL provides, in pertinent part: "Unfair Competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising[.]"

204.    Throughout the Class Period, Coca-Cola engaged in acts of unfair competition, as defined by Cal. Bus. & Prof. Code § 17200, by using false and misleading statements to promote the sale of Simply Orange as described above.

205.    There is no benefit to consumers or competition by deceptively marketing, advertising, packaging, and labeling Simply Orange. Indeed, the harm to consumers and competition is substantial.

206.     Coca-Cola's conduct, described herein, also violated the "fraudulent" prong of the UCL by representing that Simply Orange was "Simply Orange," "100% Pure Squeezed," and "Pure," when, in fact, it was not.

207.     Plaintiffs Gonzalez and Yee, and the other members of the California Class who purchased Coca-Cola's Simply Orange would not have purchased Simply Orange absent Coca-Cola's unfair marketing, advertising, packaging, and labeling, nor would they have paid an excessive premium price for the unfairly marketed, packaged, and labeled Simply Orange.

208.     The California Plaintiffs and the other members of the California Class who purchased Simply Orange had no way of reasonably knowing that the Simply Orange they bought was not as marketed, advertised, packaged, and labeled.  Thus, they could not have reasonably avoided the injury that each of them suffered.

209.     Plaintiffs Gonzalez and Yee and the other members of the California Class members suffered lost money or property as a result of Coca-Cola's UCL violations because they were induced to (a) purchase a product they would not have otherwise purchased had they known its true composition; and (b) pay substantially more for Simply Orange than they would have paid if its true characteristics had not been concealed or misrepresented.

210.     As a result of the business acts and practices described above, Plaintiffs Gonzalez and Yee and the other members of the California Class, pursuant to Cal. Bus. & Prof. Code § 17203, are entitled to:  (a) an Order requiring Coca-Cola to cease the acts of unfair competition alleged herein; (b) an Order requiring corrective disclosures; (c) full restitution of all monies paid to Coca-Cola as a result of their deceptive practices; (d) interest at the highest rate allowed by law; and (e) the payment of the California Plaintiffs' attorneys' fees and costs pursuant to, *inter alia*, California Code of Civil Procedure § 1021.5.

**COUNT V**

**Violation of the False Advertising Law, Cal. Bus. & Prof. Code § 17500 *et seq.***
**(on behalf of the California Class)**

211.     Plaintiffs Gonzalez and Yee repeat the allegations contained in the above paragraphs as if fully set forth herein.

212.     The California Plaintiffs assert this claim individually and on behalf of the California Class.

213.     California's False Advertising Law, Cal. Bus. & Prof. Code § 17500 *et seq.*, makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, . . . in any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement concerning . . . personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

214.     Throughout the Class Period, Coca-Cola committed acts of false advertising defined by Cal. Bus. & Prof. Code § 17500, by using false and misleading statements to promote the sale of Simply Orange as described above.

215.     Throughout the Class Period, Defendant prepared and distributed within the State of California – via commercial marketing and advertising, the World Wide Web (*i.e.*, the Internet), product packaging and labeling, and other promotional materials –statements that misleadingly and deceptively represent the nature of Simply Orange, including that Simply Orange is "100% Pure Squeezed," "Simply Orange," "NOT FROM CONCENTRATE," "Pure" and "Natural."

57

216.    Coca-Cola knew, or should have known, through the exercise of reasonable care that the statements were untrue and misleading and that they omitted material facts.

217.    Coca-Cola's actions were false and misleading and omitted material facts, such that the general public was likely to be deceived.

218.    The California Plaintiffs and the other members of the California Class relied on Coca-Cola's false, misleading, and deceptive written misrepresentations that Simply Orange is "100% Pure Squeezed," "Simply Orange," "NOT FROM CONCENTRATE," and "Pure." Had they known that the statements they relied on were false, misleading, deceptive and unfair, they would not have purchased Simply Orange or paid the premium price that Coca-Cola charged for it.

## **COUNT VI**
**Violation of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq*.**
**(on behalf of the Florida Class)**

219.    Plaintiffs D'Aloia and Hallman repeat the allegations contained in the above paragraphs as if fully set forth herein.

220.    Plaintiffs D'Aloia and Hallman assert this claim individually and on behalf of the Florida Class.

221.    Plaintiffs D'Aloia and Hallman bring this claim pursuant to the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq*.

222.    At all relevant times, Coca-Cola provided goods or services and thereby engaged in trade or commerce, as defined in Fla. Stat. § 501.203.

223.    Throughout the Class Period, Coca-Cola committed a deceptive, misleading, and unfair trade practice by misrepresenting and omitting material facts in the marketing and

advertising of Simply Orange to Plaintiffs D'Aloia and Hallman and the other members of the Florida Class.

224.    Coca-Cola's unlawful practices directly damaged Plaintiffs D'Aloia and Hallman and the other members of the Florida Class.  It induced consumers to purchase Simply Orange when they otherwise would not have or to pay premium prices for Simply Orange compared to comparable juice products.

225.    The damages suffered by Plaintiffs D'Aloia and Hallman and the other members of the Florida Class were directly and proximately caused by the deceptive, misleading, and unfair practices of Defendant, as more fully described herein.

226.    Coca-Cola's practice and course of conduct, as alleged herein, is likely to mislead and has misled consumers acting reasonably under the circumstances, to the consumers' detriment.

227.    Coca-Cola has engaged in an unfair practice that offends established public policy, and that is immoral, unethical, unscrupulous, or substantially injurious to consumers.

228.    Upon information and belief, Coca-Cola acted and continues to act in an identical or substantially similar manner with respect to each member of the Florida Class by adopting or implementing identical or substantially similar practices.

229.    Plaintiffs D'Aloia and Hallman and the other members of the Florida Class seek monetary damages in the form of actual and consequential damages recoverable from Coca-Cola.  They also seek injunctive relief against Coca-Cola.  Plaintiffs' counsel is entitled to recover their reasonable attorneys' fees and expenses as a result of the monetary and non-monetary benefits obtained on behalf of the Florida Class.

**Violation of the Illinois Consumer Fraud Act**
**(on behalf of the Illinois Class)**

230.     Plaintiff Davis repeats the allegations contained in the above paragraphs as if fully set forth herein.

231.     Plaintiff Davis asserts this claim individually and on behalf of the Illinois Class.

232.     Throughout the Class Period, Plaintiff Davis and the other members of the Illinois Class and Coca-Cola were "persons" within the meaning of 815 ILCS 505/1(c).

233.     Throughout the Class Period, Coca-Cola conducted "trade" and "commerce" within the meaning of 815 ILCS 505/1(f) by its advertising, offering for sale, and sale of Simply Orange.

234.      Throughout the Class Period, Plaintiff Davis and the other members of the Illinois Class were "consumers" within the meaning of 815 ILCS 505/1(e).

235.     Under the Illinois Consumer Fraud and Deceptive Practices Act, the use or employment of any practice described in Section 2 of the Uniform Deceptive Trade Practices Act ("UTPA"), 815 ILCS 510/2, in the conduct of any trade or commerce is unlawful, irrespective of whether any person has, in fact, been misled, deceived, or damaged thereby.

236.     Under Section of the 2 of the UTPA, 815 ILCS 510/2, a person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation, that person represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have.  815 ILCS 510(2)(a)(5).

237.     Coca-Cola's deceptive acts and practices, alleged herein, including but not limited to, (a) Coca-Cola's sale of Simply Orange – labeled, packaged, and advertised as "100% Pure Squeezed" – and (b) Coca-Cola's failure to disclose that Simply Orange is heavily processed and

injected with chemically-engineered flavoring, constitute deceptive trade practices in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act.

238.    Coca-Cola misrepresented that Simply Orange was "100% Pure Squeezed" when, in fact, it was not.

239.    Coca-Cola intended for Plaintiff Davis and the other Illinois Class members to rely on its aforementioned deceptive acts and practices, and such deceptive acts and practices occurred in the course of conduct involving trade or commerce.

240.    Plaintiff Davis and the other Illinois Class members relied on such misrepresentations and were deceived.

241.    Coca-Cola's violation of the Illinois Consumer Fraud and Deceptive Business Practices Act caused Plaintiff Davis and the other Illinois Class members to sustain substantial and ascertainable losses of money or property and other damages because they were induced to purchase or paid a price premium due to the descriptors and labeling on Simply Orange and Coca-Cola's failure to disclose the degree of processing of Simply Orange and its dependence on added flavoring.

242.    815 ILCS 505/10 also permits the Court to enter injunctive relief to require Coca-Cola to stop the unlawful, unfair and deceptive conduct alleged herein and award Plaintiff Davis and the other members of the Illinois Class their costs and reasonable attorneys' fees.

## COUNT VIII
### Violation of the Illinois Consumer Fraud and Deceptive Practices Act
### Unfair and Deceptive Practices
### (on behalf of the Illinois Class)

243.    Plaintiff Davis repeats the allegations contained in the above paragraphs as if fully set forth herein.

244.    Plaintiff Davis asserts this claim individually and on behalf of the Illinois Class.

245.    The Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1 *et seq*., prohibits unfair methods of competition and unfair and deceptive acts or practices, including among other things, "the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, . . . whether any person has in fact been misled, deceived or damaged thereby."

246.    Throughout the Class Period, Coca-Cola conducted "trade" and "commerce" within the meaning of 815 ILCS 505/1(f) by its advertising, offering for sale, and sale of Simply Orange.

247.    The Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1(b), defines the term "merchandise" to include goods such as Simply Orange.

248.    The Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/1(c), broadly defines the term "person" to include corporations and business entities, such as Coca-Cola.

249.    The Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/1(e), of defines the term "consumer" to include purchasers of goods for personal or household use, such as Plaintiff Davis and the other Illinois Class members.

250.    Coca-Cola's acts and practices, alleged herein, constitute unfair, deceptive, or fraudulent business practices in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, including but not limited to, Coca-Cola's sale of Simply Orange labeled, packaged, and advertised as "100% Pure Squeezed," and Coca-Cola's failure to disclose that Simply Orange is heavily processed and injected with chemically-engineered flavoring.

251.     Coca-Cola intended for Plaintiff Davis and the other Illinois Class members to rely on its aforementioned deceptive acts and practices, and such deceptive acts and practices occurred in the course of conduct involving trade or commerce.

252.     Plaintiff Davis and the other Illinois Class members relied on such misrepresentations and were deceived.

253.     Coca-Cola's violation of the Illinois Consumer Fraud and Deceptive Business Practices Act caused Plaintiff Davis and the other Illinois Class members to sustain substantial and ascertainable losses of money or property and other damages because they were induced to purchase or paid a price premium due to the descriptors and labeling on Simply Orange and Coca-Cola's failure to disclose the degree of processing of Simply Orange and its dependence on added flavoring.

### COUNT IX
**Violation of New York General Business Law § 349**
**(on behalf of the New York Class)**

254.     Plaintiff Dasaro repeats the allegations contained in the above paragraphs as if fully set forth herein.

255.     Plaintiff Dasaro asserts this claim individually and on behalf of the New York Class.

256.     Coca-Cola engaged in false and misleading marketing concerning the nature of Simply Orange.

257.     As alleged above, by advertising, marketing, distributing, or selling Simply Orange to Plaintiff Dasaro and the other members of the New York Class, Coca-Cola engaged in, and continues to engage in, deceptive acts and practices.

258.     Plaintiff Dasaro and other members of the New York Class seek to enjoin such unlawful deceptive acts and practices as described above.  Each of the Class members will be irreparably harmed unless Coca-Cola's unlawful actions are enjoined, in that Coca-Cola will continue to falsely and misleadingly advertise the nature of Simply Orange.  Towards that end, Plaintiff Dasaro and the other members of the New York Class seek an order directing appropriate disclosures or disclaimers on the labeling and in advertising, marketing, and promotion of Simply Orange.

259.     Absent injunctive relief, Coca-Cola will continue to manufacture and sell Simply Orange with the misleading and deceptive claims and omissions described above to the detriment of consumers.

260.     In this respect, Coca-Cola has violated and continues to violate, N.Y. Gen. Bus. Law ("GBL") § 349, which makes deceptive acts and practices unlawful.  As a direct and proximate result of Coca-Cola's violation of GBL § 349 as described above, Plaintiff Dasaro and the other members of the New York Class have suffered damages, in an amount to be determined at trial.

## COUNT X
### Violation of New York General Business Law § 350
### (on behalf of the New York Class)

261.     Plaintiff Dasaro repeats the allegations contained in the above paragraphs as if fully set forth herein.

262.     Plaintiff Dasaro asserts this claim individually and on behalf of the New York Class.

263.     Coca-Cola engaged in false advertising concerning Simply Orange and failed to disclose the ingredients contained in Simply Orange as described above.

264. GBL § 350-a defines "false advertising" as "advertising, including labeling, of a commodity, or of the kind, character, terms, or conditions of any employment opportunity if such advertising is misleading in a material respect."

265. As fully alleged above, by advertising, marketing, distribution, labeling, and selling Simply Orange to Plaintiff Dasaro and the other members of the New York Class as described above, Defendant engaged in, and continues to engage in, false advertising.

266. Plaintiff Dasaro and the other members of the New York Class further seek to enjoin such unlawful deceptive acts and practices as described above. Each of the Class members will be irreparably harmed unless Coca-Cola's unlawful actions are enjoined in that Coca-Cola will continue to falsely advertise the nature of Simply Orange as described above. Toward that end, Plaintiff Dasaro and the New York Class seek an order directing appropriate disclosures or disclaimers on the labeling or advertising of Simply Orange.

267. Absent injunctive relief, Coca-Cola will continue to falsely advertise Simply Orange as described above to the detriment of consumers.

268. In this respect, Coca-Cola has violated and continues to violate, GBL § 350, which makes false advertising unlawful. As a direct and proximate result of Defendant's violation of GBL § 350 as described above, Plaintiff Dasaro and the other members of the New York Class have suffered damages, in an amount to be determined at trial.

**Breach of Implied Warranty of Merchantability**
**(on behalf of the California, Missouri, and New Jersey Classes)**

269.    Plaintiffs Gonzalez, Yee, Wieczorek and Sovocool repeat the allegations contained in the above paragraphs as if fully set forth herein.

270.    Plaintiffs Gonzalez, Yee, Wieczorek, and Sovocool assert this claim individually and on behalf of the members of the California, Missouri, and New Jersey Classes against Coca-Cola.

271.    Plaintiffs and other members of the California, Missouri, and New Jersey Classes purchased Simply Orange for the ordinary purpose of household orange juice consumption.

272.    By representing that Simply Orange was "Simply Orange," "100% Pure Squeezed," "NOT FROM CONCENTRATE," and "Pure," Coca-Cola impliedly warranted that Simply Orange was of a merchantable quality, such that Simply Orange was of the same grade, quality, and value as similar goods sold under similar circumstances.

273.    Plaintiffs Gonzalez, Yee, Wieczorek, Sovocool and other members of the California, Missouri and New Jersey Classes relied on Coca-Cola's representations that Simply Orange was "100% Pure Squeezed" when they purchased Simply Orange.

274.    Coca-Cola breached the warranty implied at the time of sale in that Plaintiffs Gonzalez, Yee, Wieczorek, and Sovocool and other members of the California, Missouri, and New Jersey Classes did not receive goods that were "Simply Orange," and "100% Pure Squeezed" as represented, and thus the goods were not merchantable as fit for their ordinary purposes for which the goods are used or promoted, marketed, advertised, packaged, labeled, or sold.

275. At all times relevant to this action, Coca-Cola has breached its implied warranties concerning Simply Orange because Simply Orange is not "100% Pure Squeezed" and "Simply Orange," but, rather, is heavily processed and contains added flavoring. Coca-Cola's conduct violates the following state implied warranty laws:

        (a) Cal. Com. Code § 2314;

        (b) Mo. Rev. Stat. § 400-2.314; and

        (c) N.J. Stat. Ann. § 12A:2-314 and § 12A:2-315.

276. The above states do not require privity of contract to recover for breach of implied warranty.

277. As a result of Coca-Cola's breach of implied warranties, Plaintiffs Gonzalez, Yee, Wieczorek, and Sovocool and other members of the California, Missouri and New Jersey Classes have been damaged in the amount of the price premium that they paid for Simply Orange.

## COUNT XII
### Unjust Enrichment
### (on behalf of the Alabama, California, Illinois, Missouri, New Jersey, and New York Classes)

278. Plaintiffs Veal, Gonzalez, Yee, Davis, Wieczorek, Sovocool and Dasaro repeat the allegations contained in the above paragraphs as if fully set forth herein.

279. Plaintiffs Veal, Gonzalez, Yee, Davis, Wieczorek, Sovocool and Dasaro assert this claim individually and on behalf of the members of the Alabama, California, Illinois, Missouri, New Jersey, and New York Classes.

280. Although there are numerous permutations of the elements of the common law unjust enrichment cause of action in the various states, there are no material differences. In all states, the focus of an unjust enrichment claim is whether the defendant was *unjustly* enriched. At the core of each state's law are two fundamental elements: (a) the defendant received a

benefit from the plaintiff, and (b) it would be inequitable for the defendant to retain that benefit without compensating the plaintiff. The focus of the inquiry is the same in each state. Because there is no material conflict relating to the elements of unjust enrichment between the Class members' respective jurisdictions, the law of Georgia (where Coca-Cola maintains its principal place of business) law may be applied to those claims.

281. Plaintiffs Veal, Gonzalez, Yee, Davis, Wieczorek, and Sovocool and the Alabama, California, Illinois, Missouri, New Jersey, and New York Class members conferred a benefit on Coca-Cola by purchasing Simply Orange.

282. Coca-Cola has been unjustly enriched in retaining the revenues derived from these Class members' purchases of Simply Orange, which retention under these circumstances is unjust and inequitable because Coca-Cola misrepresented that Simply Orange was "100% Pure Squeezed," Simply Orange," and a "pure" and "natural" orange juice when, in fact, it was not, which caused injury to Plaintiffs and Alabama, California, Illinois, Missouri, New Jersey, and New York Class members because they paid a price premium due to the mislabeling of Simply Orange.

283. Because Coca-Cola's retention of the non-gratuitous benefit conferred on it by Plaintiffs Veal, Gonzalez, Yee, Davis, Wieczorek, Sovocool, Dasaro and the Alabama, California, Illinois, Missouri, New Jersey, and New York Class members is unjust and inequitable, Coca-Cola owes restitution to them on account of its unjust enrichment, in an amount to be determined and ordered by the Court.

## COUNT XIII
## Breach of Express Warranty
## (on behalf of the Minute Maid Pure Squeezed Class)

284.    Plaintiff Veal repeats the allegations contained in the above paragraphs as if fully set forth herein.

285.    Plaintiff Veal asserts this claim individually and on behalf of the Minute Maid Pure Squeezed Class.

286.    During the Minute Maid Pure Squeezed Class Period, Plaintiff Veal and the other members of the Minute Maid Pure Squeezed Class formed a contract with Coca-Cola at the time they purchased Minute Maid Pure Squeezed.  The terms of that contract include the promises and affirmations of fact that Coca-Cola makes on the packaging of Minute Maid Pure Squeezed and through marketing and advertising including Coca-Cola's promises that Minute Maid Pure Squeezed is "100% Pure Squeezed" orange juice, "Pure Squeezed" and "Never From Concentrate" as described above.  This marketing and advertising constitute express warranties and became part of the basis of the bargain, and are part of the standardized contract between, on the one hand, Coca-Cola, and on the other Plaintiff Veal and the other members of the Minute Maid Pure Squeezed Class.

287.    In addition or in the alternative to the formation of an express contract, Coca-Cola made each of its above described representations to induce Plaintiff Veal and the other members of the Minute Maid Pure Squeezed Class to rely on such representations, and they did rely on Coca-Cola's representations that Minute Maid Pure Squeezed is "100% Pure Squeezed," "Pure Squeezed," and "Never From Concentrate" as material factors in their decisions to purchase it.

288. All conditions precedent to Coca-Cola's liability under this contract have been performed by Plaintiff Veal and other members of the Minute Maid Pure Squeezed Class when they purchased Minute Maid Pure Squeezed for its ordinary purposes.

289. Through its marketing, product packaging, and point of sale materials, Defendant has expressly and unambiguously warranted under section 2-313 of the Uniform Commercial Code and other states' laws that Minute Maid Pure Squeezed is "100% Pure Squeezed," "Pure Squeezed" and "Never From Concentrate."

290. At all times relevant to this action, Coca-Cola has breached its express warranties about Minute Maid Pure Squeezed because Minute Maid Pure Squeezed is not "100% Pure Squeezed" orange juice or "Pure Squeezed."

291. By delivering a product that is not, in fact, "100% Pure Squeezed" orange juice and "Pure Squeezed" orange juice, due to its heavy processing and added flavoring (an undisclosed ingredient), Defendant has breached its express warranty made directly to Plaintiff Veal and the Minute Maid Pure Squeezed Class members.

292. Plaintiff Veal and other members of the Minute Maid Pure Squeezed Class were injured as a direct and proximate result of Coca-Cola's breach because (a) they paid a premium price due to the misrepresentations and omissions of material fact on Minute Maid Pure Squeezed's packaging and in Coca-Cola's marketing and advertising of Minute Maid Pure Squeezed; and (b) Minute Maid Pure Squeezed did not have the composition, attributes, characteristics, or value as promised.

293. Plaintiff Veal made a demand upon Defendant to change its practices and refund the loss experienced by the Minute Maid Pure Squeezed Class members, but Defendant rejected his demand.

## COUNT XIV
## Breach of Contract
## (on behalf of the Minute Maid Pure Squeezed Class)

294.     Plaintiff Veal repeats the allegations contained in the above paragraphs as if fully set forth herein.

295.     Plaintiff Veal asserts this claim individually and on behalf of the Minute Maid Pure Squeezed Class.

296.     During the Minute Maid Pure Squeezed Class Period, Plaintiff Veal and the other members of the Minute Maid Pure Squeezed Class formed a contract with Coca-Cola at the time they purchased Minute Maid Pure Squeezed.  The terms of that contract include the promises and affirmations of fact Coca-Cola makes on Minute Maid Pure Squeezed's packaging and through marketing and advertising including Coca-Cola's promises that Minute Maid Pure Squeezed is "100% Pure Squeezed" orange juice or "Pure Squeezed" and "Never From Concentrate" as described above.  Coca-Cola has expressly and unambiguously sold its Minute Maid Pure Squeezed as "100% Pure Squeezed" orange juice, "Pure Squeezed" and "Never From Concentrate."  This marketing and advertising became part of the basis of the bargain, and are part of the standardized contract between Plaintiff Veal and the other members of the Minute Maid Pure Squeezed Class.

297.     Plaintiff Veal and the Minute Maid Pure Squeezed Class members purchased Minute Maid Pure Squeezed.

298.     Defendant breached its contracts with Plaintiff Veal and the other members of the Minute Maid Pure Squeezed Class by delivering a highly-processed, flavored, and unnatural product that is not "100% Pure Squeezed" orange juice or "Pure Squeezed."

## COUNT XV
### Breach of Express Warranty
### (on behalf of the Minute Maid Premium Class)

299.    Plaintiff Veal repeats the allegations contained in the above paragraphs as if fully set forth herein.

300.    Plaintiff Veal asserts this claim individually and on behalf of the Minute Maid Premium Class.

301.    During the Class Period, Plaintiff Veal and the other members of the Minute Maid Premium Class formed a contract with Coca-Cola at the time they purchased Minute Maid Premium.  The terms of that contract include the promises and affirmations of fact that Coca-Cola makes on Minute Maid Premium's packaging and through marketing and advertising, including Coca-Cola's promises that Minute Maid is "100% Pure Squeezed," "100% Orange Juice" and contains "natural orange goodness" as described above.  This marketing and advertising constitute express warranties and became part of the basis of the bargain, and are part of the standardized contract between Plaintiff Veal and the other members of the Minute Maid Premium Class.

302.    In addition or in the alternative to the formation of an express contract, Coca-Cola made each of its above described representations to induce Plaintiff Veal and the other members of the Minute Maid Premium Class to rely on such representations, and they did so rely on Coca-Cola's representations that Minute Maid Premium is "100% Pure Squeezed," "100% orange juice" and that it contains "natural orange goodness," as material factors in their decisions to purchase Minute Maid Premium.

303. All conditions precedent to Coca-Cola's liability under this contract have been performed by Plaintiff Veal and other members of the Minute Maid Premium Class when they purchased Minute Maid Premium for its ordinary purposes.

304. Through its marketing, product packaging, and point of sale materials, Defendant has expressly and unambiguously warranted under section 2-313 of the Uniform Commercial Code that Minute Maid Premium is "100% Pure Squeezed," "100% orange juice" and contains "natural orange goodness."

305. At all times relevant to this action, Coca-Cola has breached its express warranties about Minute Maid Premium because Minute Maid Premium is not "100% Pure Squeezed" or "100% orange juice" and does not contain "natural orange goodness."

306. By delivering a product that is not, in fact, "100% Pure Squeezed" or "100% orange juice" and that does not contain "natural orange goodness" or due to its heavy processing and added flavoring (an undisclosed ingredient), Defendant has breached its express warranty made directly to Plaintiff Veal and the other Minute Maid Premium Class members.

307. Plaintiff Veal and the other members of the Minute Maid Premium Class were injured as a direct and proximate result of Coca-Cola's breach because (a) they paid a premium price due to the misrepresentations and omissions of material fact on Minute Maid Premium's packaging and in Coca-Cola's marketing and advertising of Minute Maid Premium; and (b) Minute Maid Premium did not have the composition, attributes, characteristics, or value as promised.

308. Plaintiff Veal made a demand upon Defendant to change its practices and refund the loss experienced by the Minute Maid Premium Class members, but Coca-Cola rejected his demand.

## COUNT XVI
### Breach of Contract
### (on behalf of the Minute Maid Premium Class)

309. Plaintiff Veal repeats the allegations contained in the above paragraphs as if fully set forth herein.

310. Plaintiff Veal asserts this claim individually and on behalf of the Minute Maid Premium Class.

311. Defendant has expressly and unambiguously sold its Minute Maid Premium as "100% Pure Squeezed," "100% orange juice," and containing "natural orange goodness."

312. During the Class Period, Plaintiff Veal and the Minute Maid Premium Class members purchased Minute Maid Premium. They formed a contract with Coca-Cola at the time they purchased Minute Maid Premium. The terms of that contract include the promises and affirmations of fact that Coca-Cola makes on Minute Maid Premium's packaging and through marketing and advertising, including Coca-Cola's promises that Minute Maid is "100% Pure Squeezed," "100% Orange Juice" and contains "natural goodness" as described above. This marketing and advertising constitute express warranties and became part of the basis of the bargain, and are part of the standardized contract between Plaintiff Veal and the other members of the Minute Maid Premium Class.

313. Defendant breached the contracts by delivering a highly-processed, flavored, and unnatural product that is not "100% Pure Squeezed," "100% orange juice" or "natural orange goodness."

WHEREFORE, Plaintiffs, individually and on behalf of other members of their respective Classes described in this Complaint, seek judgment against Coca-Cola, as follows:

A.      For an order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as Class Representatives and their attorneys as Class Counsel to represent Class members;

B.      For an order declaring that Coca-Cola's conduct violates the statutes and common laws referenced herein;

C.      For an order adjudging Defendant to be liable to Plaintiffs and the Classes on all counts asserted herein;

D.      For an order awarding, as appropriate, compensatory, treble, and/or punitive damages in amounts to be determined by the Court and/or jury;

E.      For prejudgment interest on all amounts awarded;

F.      For an order of restitution and all other forms of equitable monetary relief;

G.      For injunctive relief as pleaded including: enjoining Coca-Cola from continuing the practices set forth above; directing Coca-Cola to cease its deceptive and misleading marketing campaigns in which it describes Simply Orange as "100% Pure Squeezed Orange Juice," "Simply Orange," "NOT FROM CONCENTRATE," "Pure," and "Natural;" Minute Maid Premium as being "100% Pure Squeezed," "100% orange juice" and containing "natural orange goodness; "Minute Maid Pure Squeezed as "100% Pure Squeezed" orange juice, "Pure Squeezed," and "Never From Concentrate" and directing Coca-Cola to disgorge all monies Coca-Cola acquired by any act or practice declared by this Court to be wrongful; or as the Court may deem proper; and

H.      For an order awarding Plaintiffs and the Classes their reasonable attorneys' fees, costs, and expenses suit.

# JURY DEMAND

Plaintiffs hereby demand a trial by jury on all claims so triable.


DATE:  August 14, 2012

**STUEVE SIEGEL HANSON LLP**


| | |
|---|---|
| _____/s/ Norman E. Siegel_____ | **SEEGER WEISS LLP** |
| Norman E. Siegel MO Bar No. 44378 | Stephen A. Weiss |
| Matthew L. Dameron  MO Bar No. 52093 | Dion P. Kekatos |
| 60 Nichols Road, Suite 200 | Scott A. George |
| Kansas City, Missouri  64112 | Parvin K. Aminolroaya |
| Tel.: (816) 714-7100 | 77 Water Street, 26th Floor |
| Fax: (816) 714-7101 | New York, New York  10005 |
| **PLAINTIFFS' LIAISON COUNSEL** | Tel.: (212) 584-0700 |
| | Fax: (212) 584-0799 |
| | **PLAINTIFFS' CO-LEAD COUNSEL** |
| | |
| **CARELLA BYRNE CECCHI** | **REESE RICHMAN LLP** |
| **STEWART & OLSTEIN, P.C.** | Michael Reese |
| James Cecchi | Kim Richman |
| Caroline Bartlett | 875 Avenue of the Americas, 18th Floor |
| Donald Ecklund | New York, New York  10001 |
| 5 Becker Farm Rd. | Tel.: (212) 643-0500 |
| Roseland, New Jersey  07068 | Fax: (212) 253-4272 |
| Tel.: (973) 994-1700 | **PLAINTIFFS' CO-LEAD COUNSEL** |
| Fax: (973) 994-1744 | |
| **PLAINTIFFS' CO-LEAD COUNSEL** | |

76

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on August 14, 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to all counsel of record.

/s/ Norman E. Siegel
Norman E. Siegel